# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-10-00411-CV

---

### The Boeing Company, Appellant

### v.

### Greg Abbott, Attorney General of Texas, and The Greater Kelly Development Authority n/k/a The Port Authority of San Antonio, Appellees

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-05-004504, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

---

### O P I N I O N

Boeing Company appeals from the district court's final judgment denying Boeing's request for declaratory and injunctive relief under the Texas Public Information Act (PIA). *See* Tex. Gov't Code Ann. §§ 552.001-.353 (West 2004 & Supp. 2010). Boeing brought suit seeking to prevent disclosure of portions of a real property lease agreement between Boeing and The Greater Kelly Development Authority n/k/a The Port Authority of San Antonio ("the Port"). The final judgment denies Boeing its requested relief and orders that the information at issue be made available to the requestor. We affirm the district court's judgment.

### BACKGROUND

Boeing is a major aerospace company, providing goods and services to both the private and public sectors.[1] In 1995, Boeing's lease with American Airlines in Tulsa, Oklahoma,

---

[1] The background facts are based on the undisputed testimony and exhibits from the trial on the merits.

was ending, and Boeing had begun a nationwide search for suitable, substitute property to lease. Eventually, Boeing entered into lease negotiations with the Port regarding property at the former Kelly Air Force Base in San Antonio, Texas ("Kelly").

According to Boeing, these lease negotiations continued for more than two years and involved more than twelve Boeing employees. In addition, Boeing hired outside consultants to develop a "competitive range" model with respect to any proposed lease terms. Through negotiations, Boeing sought to obtain lease terms within this competitive range in order to assure its ability to compete for future government contracts from the Kelly location.

According to the Port, in order to induce Boeing to relocate to San Antonio, the City of San Antonio secured a $32.5 million loan from the U.S. Department of Housing and Urban Development to pay for property improvements at Kelly. In turn, the City of San Antonio loaned the Port $32.5 million to complete the improvements. In 1998, Boeing and the Port executed a lease for approximately 1.3 million square feet at Kelly for an initial term of twenty years ("the Lease"). The Port claims that Boeing's payments under the Lease help the Port repay the loan to the City of San Antonio.

At Kelly, Boeing's work has consisted primarily of aircraft maintenance and modification for the United States Air Force. Among the aircraft serviced by Boeing at Kelly are the C-17 Globemaster, the C-130 Hercules cargo aircraft, and the KC-135 Stratotanker. Under contracts with the Air Force, Boeing is responsible for upgrading and maintaining these aircraft as necessary. For example, Boeing services K-135s, Eisenhower-era tankers which provide in-flight refueling, by doing complete upgrades and periodic inspections to determine if the airplanes are safe

2

to continue in operation. Similarly, Boeing upgrades C-17s, an aircraft used in both military and humanitarian missions, by making their configurations more uniform and thus easier to fly and maintain. Boeing also installs defensive countermeasures on the C-17s, allowing the aircraft to thwart missile attacks when supplying forces in hostile areas. Finally, Boeing is responsible for modernizing the avionics of over two hundred C-130s, a four engine turbo-prop cargo plane that has been in continuous use for more than fifty years.

In 2005, Robert Silvas made a request under the PIA for, among other things, the Lease between Boeing and the Port.[2] Boeing notified the Attorney General of Texas of its objections to the release of certain Lease terms, primarily related to amounts paid by Boeing under the Lease, including rental rates, share of common maintenance costs, insurance-coverage requirements, liquidated-damages provisions, and lease incentives ("the Lease information"). *See* Tex. Gov't Code Ann. § 522.305(b) (West 2004) (providing that person whose privacy or property interests are implicated by request may submit reasons for withholding information to attorney general). Upon considering Boeing's objections, the attorney general issued a letter ruling determining that the Lease information was not excepted from disclosure under the PIA.[3]

---

[2] Boeing asserts that Silvas is a disgruntled former employee. Even if true, this information is irrelevant; the PIA prohibits inquiry into the motives of the party requesting the release of information. *See* Tex. Gov't Code Ann. § 552.222 (West Supp. 2010); *A&T Consultants v. Sharp*, 904 S.W.2d 668, 676 (Tex. 1995) (noting that the PIA precludes factual inquiry into requesting party's intentions).

[3] Upon review of the Lease information by the United States Department of Homeland Security, the parties have stipulated that portions of the Lease information are confidential under the Critical Infrastructure Information Act of 2002. 6 U.S.C.A. §§ 131-134 (West 2007). Accordingly, those portions of the Lease have been redacted and are not at issue in this case.

3

Boeing then filed suit against the attorney general and the Port, challenging the attorney general's ruling.[4]  In this suit, Boeing sought a declaration that the Lease information is not subject to disclosure because the information falls within one or more exceptions to disclosure under the PIA.  Boeing also sought an injunction to prevent the Port from disclosing the information on this basis.  *See id*. § 552.3215 (West 2004) (providing that person who claims to be victim of PIA violation may bring suit for declaratory judgment or injunctive relief).  After a bench trial on the merits, the court denied Boeing any relief and ordered that the Port make the information available to Silvas.  The court then issued findings of fact and conclusions of law.  In relevant part, the court found that (1) the Lease is a contract relating to the receipt or expenditure of public or other funds of a government body, (2) the Lease information is not a trade secret, and (3) the Lease was negotiated between Boeing and the Port and is fully executed, is not the result of competitive bidding, and is not subject to any competitive-bid process.  The court issued the following relevant conclusions of law:

1.  This is a suit by [Boeing] seeking to withhold information from a requestor, pursuant to the Texas Public Information Act (PIA), Tex. Gov't Code § 552.325 (West 2004).

. . .

5.  Common law trade secrets does [sic] not protect the information at issue from disclosure.

. . .

---

[4]  Boeing sent written notice of the suit to Silvas, as required by the PIA.  *See* Tex. Gov't Code Ann. § 552.325(a), (b) (West Supp. 2010).  Though entitled to do so, Silvas did not intervene in the suit.  *See id*.

9.   Tex. Gov't Code § 552.104 does not except the information at issue from disclosure.

10.  [Boeing] lacks standing to assert section 552.104 as a basis for withholding the information at issue.

. . .

14.  The information at issue must be disclosed under Tex. Gov't Code § 552.022(a)(3); no other law, including common law trade secrets, expressly makes the information confidential.

On appeal, Boeing asserts that the trial court erred in ordering disclosure of the Lease information. Specifically, Boeing asserts in three issues that (1) the Lease information is a trade secret, and therefore protected from disclosure under section 552.022 as "expressly confidential under other law," (2) Boeing has standing to invoke section 522.104 of the PIA, and (3) the Lease information would give advantage to a competitor or bidder and therefore is protected from disclosure under section 522.104 of the PIA.

**STANDARD OF REVIEW**

In an appeal of a bench trial, findings of fact issued by the trial court have the same force and effect as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696-97 (Tex. 1986). As the fact finder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*.

5

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Similarly, issues of statutory construction are questions of law that are reviewed de novo. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). In construing a statute, our primary objective is to determine the legislature's intent, which, when possible, we discern from the plain meaning of the words chosen. *Id*. Accordingly, once the facts are established, a determination of whether an exception under the PIA applies to support the withholding of public information is a question of law. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000).

## DISCUSSION

*The Texas Public Information Act*

The express purpose of the PIA is to ensure public access to complete information about the affairs of government and its public officials and employees. *See* Tex. Gov't Code Ann. § 552.001(a) (West 2004). Through this access to information, the public "may retain control over the instruments they have created." *Id.* Consistent with this policy, the legislature has mandated that the PIA is to be liberally construed in favor of granting requests for information. *Id*. § 552.001(b).

Under the PIA, information that is collected, assembled, or maintained by or for a governmental body is public information. *Id*. § 552.002(a) (West 2004). Public information is available upon request and may not be withheld from disclosure unless it falls within an exception to disclosure provided for in the PIA. *In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001) (orig. proceeding)*; Arlington Indep. Sch. Dist. v. Texas Attorney Gen*., 37 S.W.3d 152, 157 (Tex.

6

App.—Austin 2001, no pet.). The exceptions to disclosure under the PIA are to be narrowly construed. *Arlington Indep. Sch. Dist.*, 37 S.W.3d at 157. A governmental body that wishes to withhold requested information must request a determination from the attorney general, asserting which exceptions under the PIA permit the governmental body to withhold the information. *Id*. A governmental body generally waives any exception to disclosure that it fails to raise before the attorney general. Tex. Gov't Code Ann. § 522.326 (West 2004).

In addition, section 552.022 of the PIA sets out categories of public information that are excluded from the exceptions provided for in the PIA. *Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011); *see* Tex. Gov't Code Ann. § 552.022 (West 2004). Requested information that falls within one of these categories is considered core public information and must be disclosed unless it is "expressly confidential under other law," meaning law other than the PIA. Tex. Gov't Code Ann. § 552.022(a); *Cox Tex. Newspapers*, 343 S.W.3d at 114; *see also In re City of Georgetown*, 53 S.W.3d at 331. Information in a contract relating to the receipt or expenditure of public or other funds by a governmental body is a category of information considered core public information under section 522.022(a)(3). *See* Tex. Gov't Code Ann. § 552.022(a)(3).

In this case, the trial court found that the Lease is a "contract relating to the receipt or expenditure of public or other funds of a government body." Accordingly, the court concluded that disclosure of the Lease information is governed by 522.022(a)(3). Boeing does not dispute that the information sought is public information or that it is core public information under section 552.022(a)(3). Rather, Boeing argues that the Lease information is a common-law trade secret and

7

therefore protected from disclosure under section 552.022 as "expressly confidential under other law." *See id*. § 552.022(a). Boeing also contends that the Lease information falls within section 552.104, which excepts from disclosure information—even core public information—that if disclosed would "give advantage to a competitor or bidder." *Id*. § 552.104(b) (West 2004).[5]

*Trade-secret protection under section 522.022*

We turn first to whether the Lease information is "expressly confidential under other law" and therefore exempt from the mandatory disclosure requirement of section 522.022. At trial and now on appeal, Boeing argues that the Lease information is "expressly confidential under other law" because it is a common-law trade secret. This Court has previously recognized that common-law trade-secret information is treated as confidential and exempt from mandatory disclosure under section 552.022 of the PIA. *See Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 348 (Tex. App.—Austin 2001, no pet.) (finding that common-law trade-secret information is confidential and entitled to protection from disclosure, even though otherwise subject to mandatory disclosure under section 522.022); *see also* Tex. R. Evid. 507 (trade-secret privilege); *In re City of Georgetown*, 53 S.W.3d at 337 (noting that documents privileged or confidential under Texas Rules of Civil Procedure or Texas Rules of Evidence are "expressly made confidential under other law" under section 522.022). Because the Lease information is exempt from mandatory disclosure under

---

[5] At trial, Boeing also raised sections 552.101 and 552.110. *See* Tex. Gov't Code Ann. §§ 552.101 (excepting from disclosure information considered to be confidential by law), .110 (West 2004) (excepting from disclosure trade secrets and commercial and financial information that would cause substantial competitive harm). Boeing has not raised these grounds on appeal. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to state concisely all issues or points presented for review).

section 522.022 if it is a trade secret, we next examine whether the Lease information constitutes a common-law trade secret.

At trial, Boeing had the burden of establishing that the Lease information is a trade secret. *See Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 467 (Tex. App.—Austin 2004, pet. denied). Unless established or disproved as a matter of law, the existence of a trade secret is a question of fact. *See Rusty's Weigh Scales & Serv., Inc. v. North Tex. Scales, Inc.*, 314 S.W.3d 105, 109 (Tex. App.— El Paso 2010, no pet.) (explaining that appellant had burden at trial to present evidence of existence of trade secret to support findings of fact on misappropriation-of-trade-secret claim); *see also Zoecon Indus. v. American Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983) ("Whether customer information is generally known or readily ascertainable is a question of fact."). As the fact finder, the trial court found that the Lease information is not a trade secret. This Court is bound to this finding unless the evidence demonstrates, as Boeing contends it does, that the Lease information is a trade secret as a matter of law. *See McGalliard*, 722 S.W.2d at 696-97. The Lease information is a trade secret as a matter of law only if we determine, after examining the entire record, that the evidence conclusively establishes that the Lease information is a trade secret. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

A trade secret is any formula, pattern, device, or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it. *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (orig. proceeding). It is a process or device for continuous use in the operation of the business and generally relates to the production of goods. *Trilogy Software, Inc.*, 143 S.W.3d at 463 (citing *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 777 (Tex. 1958)). To determine whether a trade secret exists, we weigh six non-exclusive factors:

9

(1) the extent to which the information is known outside of the business;

(2) the extent to which it is known by employees and others involved in the business;

(3) the extent of the measures taken to guard the secrecy of the information;

(4) the value of the information to the business and its competitors;

(5) the amount of effort or money expended in developing the information; and

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Bass*, 113 S.W.3d. at 740 (citing Restatement of Torts § 757 cmt. b (1939); Restatement (Third) of Unfair Competition § 39 reporter's n. cmt. d (1995)). A determination of whether information qualifies as a trade secret must be made through a comparative evaluation of all the relevant factors and surrounding circumstances, including the value, secrecy, and definiteness of the information. *Id.* at 739.

Consistent with these first three factors, we recognize that a trade secret must be secret. *See McClain v. State*, 269 S.W.3d 191, 195 (Tex. App.—Texarkana 2008, no pet.); *Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 96 (Tex. App.—Houston [14th Dist.] 1994, writ denied). While absolute secrecy is not required, a substantial element of secrecy must be demonstrated. *See Trilogy Software,* 143 S.W.3d at 467 ("Before information can be a 'trade secret' there must be a substantial element of secrecy."); *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 634 (Tex. App.—Fort Worth 2007, pet. denied). A substantial element of secrecy exists when the information is not generally known or readily ascertainable by independent investigation. *Trilogy Software*, 143 S.W.3d at 467; *see McClain*, 269 S.W.3d at 195 (noting that substantial element of secrecy exists when there would be difficulty in acquiring information except

10

by use of improper means). The party claiming trade-secret status has the burden of establishing secrecy. *Trilogy Software*, 143 S.W.3d at 467.

At trial, David Bouse, former director of human resources for Boeing, testified that the Lease is not publicly available, such as through Boeing's internal or external websites. He also testified that the Lease is kept in a file cabinet in the office of Boeing's facility manager and that access to the Lease within Boeing is limited to senior staff members in finance and management. With regard to first and second factors, the undisputed evidence demonstrates that Boeing has not generally made the Lease information known outside its business and has limited its availability to certain employees within Boeing.

Also relevant to the determination of whether the Lease information is secret is the third factor, the extent of measures taken to guard the secrecy of the information. *See In re Bass*, 113 S.W.3d at 740. A party that fails to take reasonable precautions to secure the secrecy of its information cannot claim that the information constitutes a trade secret. *See Phillips v. Frey*, 20 F.3d 623, 630-31 (5th Cir. 1994) (explaining that outside any confidential relationship, one who voluntarily discloses secret information or fails to take reasonable precautions to secure its secrecy cannot properly claim that information constitutes trade secret (citing *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984))). While information disclosed to another party does not necessarily lose its secrecy, the disclosure must be made in a manner that places a duty on the receiving party not to disclose or use the secret. *Id*. at 630 (noting that owner of trade secret will not lose secrecy by disclosure if he creates duty in some manner and places that duty upon another not to disclose or use secret).

Bouse testified that Boeing is always "very concerned about the confidentiality of agreements that it enter[s] into, especially where financial terms are disclosed." However, it is undisputed that both Boeing and the Port had access to the Lease information which Boeing claims is a trade secret, and there is no evidence that Boeing took any reasonable precautions to prevent the Port from disclosing the Lease information. There is no evidence that the Port was contractually obligated to Boeing to protect the Lease information, such as through a confidentiality agreement. Further, the evidence does not establish, nor has Boeing argued, that the Port had a confidential relationship with Boeing or any other legal duty to protect the Lease information. *See Gonzales v. Zamora*, 791 S.W.2d 258, 265 (Tex. App.—Corpus Christi 1990, no writ) (noting that trade-secret protection is available even in absence of express agreement not to disclose materials where confidential relationship exists); *see also Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594-95 (Tex. 1992) (recognizing that contractual relationship does not normally give rise to confidential relationship, even where evidence of subjective trust). For example, there is no evidence that Boeing informed the Port at the time it entered into the Lease that it considered the Lease information confidential or a trade secret. *See Phillips*, 20 F.3d at 632 (noting that fact finder could have found that defendant knew information disclosed during negotiations was trade secret and that disclosure was made in confidence); *cf. Hyde Corp.*, 314 S.W.2d at 777 (noting that existence of confidential relationship is to be determined in each case, and viewing "picture as a whole," trial court concluded that confidential relationship existed). Rather, the attorney general presented evidence that the Port gave members of the news media access to the Lease and that some of the Lease terms, including the range of rent expected to be paid, were discussed in an article

12

printed in the San Antonio Business Journal. Further, Terry Britton, senior vice president of real estate development for the Port, testified that the Port's annual audit financial reports, containing the amounts that Boeing has paid annually to the Port under the Lease, are available to the public. Based on this evidence, the trial court could have reasonably concluded that Boeing failed to take reasonable precautions to protect its alleged trade secret.

Under the fourth factor, we consider the value of the information to Boeing and its competitors. *See In re Bass*, 113 S.W.3d at 740. At trial, Bouse testified that the bidding process for the government contracts upon which Boeing's work is based is extremely competitive, with much of the overhead dictated by the federal government. Bouse also testified that if the Lease information were released, a competitor could do "a build-up of the total cost of the lease to Boeing, which is a substantial portion of [Boeing's] overhead expense at Kelly Air Force Base." According to Bouse, with this information a competitor could "locate other suitable air fields around the United States, enter into negotiations with municipalities in those parts of the country and get much more favorable deals than what we have on the table and put us [at] a competitive disadvantage in retaining the current work that we have."

However, this argument fails to take into account the myriad of other factors that might influence the cost of any lease a competitor might obtain from other municipalities, such as size and location of the property. This argument also assumes that lease cost is the sole determining factor in bids for a government contract. At trial, Bouse acknowledged that the overhead rate used in Boeing's government bids includes elements such as utilities, indirect labor, and management cost, in addition to lease cost. Boeing's bids also include general and administrative corporate

13

allocations, as well as profits. Based on the evidence presented, the trial court could have reasonably concluded that Boeing failed to establish that the information was of sufficient value to Boeing and its competitors to constitute a trade secret.

Based on our review of the record, the evidence fails to conclusively establish that the Lease information is a trade secret. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) ("Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case."). Because Boeing has not shown that the information it seeks to protect is a trade secret as a matter of law, we are bound to the trial court's finding that it is not. *See McGalliard*, 772 S.W.2d at 696 (findings of fact are binding on appellate court unless contrary is established as matter of law or there is no evidence to support finding). Based on this finding, the court did not err in concluding that trade-secret law does not protect the Lease information from mandatory disclosure under section 522.022. Boeing's first issue is overruled.

*Information related to competition or bidding under section 552.104*

We now turn to whether the Lease information is excepted from disclosure under section 552.104 of the PIA. Under this section, information that would give advantage to a competitor or bidder if released is excepted from disclosure. Tex. Gov't Code Ann. § 552.104(a). Section 552.104 is a unique PIA exception because it expressly provides that the disclosure mandate normally applicable to core public information under 552.022 does not apply. *Id.* § 552.104(b). In other words, this exception to disclosure applies even when the information at issue is core public information, like the Lease information in this case. *Id.* Boeing argues that the trial court erred in concluding that (1) Boeing lacks standing to assert section 552.104 as a basis for withholding the

14

information at issue and (2) that section 552.104 does not except the information at issue from disclosure. We first decide the threshold issue of whether Boeing has standing to assert this exception.

The standing issue presented in this case is whether the PIA affords a private party, like Boeing, the right to enjoin a governmental body from disclosing public information on grounds that it is excepted from disclosure under section 552.104.[6] The attorney general contends that the trial court correctly concluded that Boeing has no right to assert section 552.104. The attorney general argues that the exception does not protect the legal interests of third parties like Boeing. Rather, the attorney general contends, section 552.104 is meant to protect the government's purchasing interests and can be waived by the governmental body if not properly raised. Section 552.110, which excepts from disclosure trade secrets and proprietary information, is meant to protect the interests of third parties.[7] Accordingly, the attorney general argues, any proprietary interest that Boeing has in the Lease information is properly asserted under section 552.110, not section 552.104.[8]

---

[6] While the parties present their arguments in terms of standing, we consider those arguments in the context of whether Boeing has a statutory right to the relief it seeks. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) ("The right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it." (citing 21 C.J.S. *Courts* § 16, at 23 (1990)).

[7] Section 552.110 excepts from disclosure (1) a trade secret obtained from a person and privileged or confidential by statute or judicial decision and (2) commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained. Tex. Gov't Code Ann. § 552.110 (West 2004).

[8] The attorney general suggests that section 552.110 of the PIA may be asserted by a private party to prohibit disclosure. *See, e.g.*, Tex. Att'y Gen. OR1990-552, 2 (noting that PIA exception protecting trade secrets and certain financial information in section 3(a)(10), now section 552.110, protects third-party interests); Tex. Att'y Gen. OR1988-514, 2-3 (noting that same PIA exception parallels exemption 4 of Freedom of Information Act and protects third-party interests). This Court

15

Boeing counters that the trial court's conclusion that section 552.104 may not be invoked by a private party is contrary to the plain and reasonable reading of the statute. Boeing contends that section 552.104 protects any information that would "give an advantage to a competitor" without limitation. Since only private parties have competitors, Boeing reasons, the exception necessarily protects private interests.

However, even assuming that section 552.104 protects the interest of private parties, as Boeing argues, it does not follow that the legislature intended for a private party to have the right to prohibit a governmental body from disclosing information on this basis. In this case, Boeing's assertion of section 552.104 is premised on the assumption that the government is prohibited from disclosing information that is excepted under section 552.104. For the reasons set forth below, we find that a plain reading of the PIA shows that section 552.104 is a purely discretionary exception. That is, if section 522.104 applies to information—even core public information—the exception from disclosure may be waived by the governmental body, unless disclosure is "prohibited by law" or the information is "confidential under law." Boeing does not assert that disclosure of the Lease information is "prohibited by law" or that the Lease information is "confidential under law," other

---

has previously recognized that information that is "a trade secret or confidential or privileged information under section 552.110" would be prohibited from disclosure under section 552.007. *See* Tex. Gov't Code Ann. § 552.007 (West 2004) (prohibiting disclosure of information when "prohibited by law or the information is confidential under law"); *Birnbaum v. Alliance of Am. Insurers*, 994 S.W.2d 766, 776 (Tex. App.—Austin 1999, pet. denied). However, although Boeing asserts that the Lease information is a trade secret, Boeing has not otherwise raised section 552.110 on appeal. Further, the trial court's factual findings would not support the application of section 552.110 in this case. Specifically, the court found that the Lease information is not a trade secret and that disclosure of the Lease information would not cause substantial competitive harm to Boeing. *See* Tex. Gov't Code Ann. § 552.110.

16

than trade-secret law, an argument which we have already rejected. The Port can waive, and in effect has waived, any claim to withhold the information under section 552.104. Tex. Gov't Code Ann. § 552.326 (West 2004). Because the waiver decision belongs solely to the governmental body, the trial court did not err in concluding that Boeing has no right under the PIA to assert section 552.104 to enjoin the Port from disclosing the Lease information.

When determining a private litigant's rights under a statute, like the PIA, our duty is to ascertain the legislature's intent. *See Brown v. De La Cruz*, 156 S.W.3d 560, 562 (Tex. 2004); *Abbott v. Texas Dept. of Health & Mental Retardation*, 212 S.W.3d 648, 655 (Tex. App.—Austin 2006, no pet.). In construing a statute, ordinarily we are confined to the plain language of the statute, construing the statute as whole, as opposed to isolated provisions. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *see State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) ("[W]e determine legislative intent from the entire act and not just isolated provisions."). We presume that the Legislature intended all provisions of the statute to be effective, with a just and reasonable result. *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010). We may consider the objective of the statute, legislative history, and the consequences of a proposed construction. Tex. Gov't Code Ann. § 311.023(1), (3), (5) (West 2005).

We also give due consideration to attorney general decisions in cases involving the PIA, under which the attorney general is mandated to determine the applicability of exceptions to disclosure. *Rainbow Grp., Ltd. v. Texas Emp't Comm'n*, 897 S.W.2d 946, 949 (Tex. App.—Austin 1995, writ denied). In interpreting section 552.104, the attorney general has previously ruled that section 552.104 can be waived by a governmental body and, further, is designed to protect the

interests of a governmental body, not a private party. *See* Tex. Att'y Gen. OR1991-592, 8 (determining that PIA exception 3(a)(4), now section 552.104, can be waived by governmental body); *see also* Tex. Att'y Gen. OR1998-514, 2 (noting that PIA exception, now section 552.104, protects government purchasing interests); Tex. Att'y Gen. OR1988-509, 4 (same). While these decisions are not controlling, because the interpretation urged in the decisions is reasonable when the statute as a whole is considered, we find them persuasive. *See City of Dallas*, 304 S.W.3d at 384 (noting that attorney general's interpretation of PIA may be persuasive, though not controlling).

Under the PIA, a governmental body must make public information available upon request unless excepted under the PIA. *See generally* Tex. Gov't Code Ann. §§ 552.101-.1425 (West 2004 & Supp. 2010). That is, a governmental body is not required to disclose public information if the information falls within one or more specific exceptions set forth in the PIA.[9] *See Arlington Indep. Sch. Dist.*, 37 S.W.3d at 157 ("The Legislature has established a wide range of exceptions to the Act which *permit* governmental entities to withhold certain information from the public.") (emphasis added). However, it does not follow that a governmental body, like the Port, is necessarily prohibited from disclosing information simply because it is excepted from required disclosure under the PIA.

Instead, the plain language of the PIA permits, but does not require, a governmental body to withhold public information that falls within an exception under the PIA. This discretion is derived from section 552.007 of the PIA, which states:

---

[9] However, if the information is considered core public information under section 522.022 it must be disclosed unless "expressly confidential under law" other than the PIA. Tex. Gov't Code Ann. § 552.022 (West 2004).

> [The PIA] does not prohibit a governmental body or its officer for public information from voluntarily making part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law.

Tex. Gov't Code Ann. § 552.007(a) (West 2004). This section makes clear that a governmental body may voluntarily disclose any public information, even when not otherwise required to disclose it, unless such disclosure is prohibited. *See id*.; *Birnbaum v. Alliance of Am. Insurers*, 994 S.W.2d 770, 776 (Tex. App.—Austin 1999, pet. denied) (explaining that under section 552.007 of the PIA government agency may release any information not expressly prohibited from release). The PIA prohibits a governmental body from disclosing public information only when disclosure is "prohibited by law" or the information is "confidential under law." *See Dominguez v. Gilbert*, 48 S.W.3d 789, 793 (Tex. App.—Austin 2001, no pet.) ("A governmental body can voluntarily disclose records that it is not required to disclose unless those records are "confidential under law."). While information that is excepted from disclosure in some cases may be "confidential under law," the fact that information is excepted under the PIA does not, in and of itself, render the information confidential under law. *Birnbaum*, 994 S.W.2d at 776 (explaining that if section 552.122 exception applied to information, the government could reject the exception and disclose information pursuant to section 552.007); *see Cox Tex. Newspapers*, 343 S.W.3d at 122 (Wainwright, J., concurring) ("'Public information' may be excepted from disclosure under Subchapter C, or may be prohibited from disclosure if the information is deemed 'confidential.'" (citing Tex. Gov't Code Ann. §§ 552.007, .101, .352 (West 2004))). Accordingly, the fact that information is excepted under the PIA does not necessarily prohibit its disclosure by the government.

Further, there is nothing that indicates that section 552.104 itself creates a class of information that is "confidential under law." *See Birnbaum*, 994 S.W.2d at 776 (finding that section 552.112 under the PIA is "a permissive exception" and explaining that section 552.112, excepting certain information in governmental reports regarding financial or securities institutions, does not "itself create a class of information that is confidential under law"). Even if we were to interpret section 552.104 broadly, as Boeing suggests, to include any information that would give an advantage to a private party's competitor without limitation, there is no indication that such information is considered confidential under the PIA or any other law. When the legislature has intended to make information confidential, it has done so in express terms. *Id*. For instance, section 552.132 of the PIA expressly makes confidential certain information regarding crime victims. Tex. Gov't Code Ann. § 552.132 (West Supp. 2010). Similarly, credit card and debit card information is expressly confidential under the PIA. *Id*. § 552.137 (West 2004). There is nothing in the PIA that suggests that the legislature intended information excepted under section 552.104 to be treated as confidential. Further, there is nothing that would suggest that information "that would give an advantage to a competitor" is considered confidential under any other law, including statutory law, constitutional law, or judicial decisions. *See id*. § 552.101 (West 2004). Therefore, section 552.104 is a discretionary exception which can be waived by the governmental body. *See Birnbaum*, 994 S.W.2d at 776 (finding that section 552.112 is permissive exception that government may waive in its discretion). Absent a showing that disclosure of the Lease information is specifically "prohibited by law" or "confidential under law," it is within the Port's discretion to waive any claim to withholding under section 552.104.

20

Neither the trial court's findings nor evidence in the record would support the conclusion that disclosure of the Lease information is "prohibited by law" or that the information is "confidential under law." In this case, the trial court did not find that disclosure of the Lease information is prohibited by law or confidential under law. Rather, the court concluded that "no other law, including common law trade secrets, expressly makes the information confidential." On appeal, Boeing does not contend that disclosure of the Lease information is prohibited by law or confidential under law, aside from trade secret law. Therefore, it was within the Port's discretion to waive any claim to withholding under section 552.104.[10] Boeing has no right under the PIA to prohibit the disclosure of public information on grounds that it is excepted from disclosure under section 552.104.[11]

---

[10] The Port has, in effect, waived the exception and chosen to release the information, having never asserted at any stage of this dispute that it wished to withhold it. *See* Tex. Gov't Code Ann. §§ 552.301 (providing that governmental body must request determination from attorney general about whether information it wishes to withhold is excepted from disclosure under specific exceptions), 552.324 (West Supp. 2010) (providing that governmental body wishing to withhold information and challenge decision by attorney general must file suit within thirty days; otherwise, it must comply with attorney general's decision). In fact, the Port, by filing a general denial, has affirmatively taken the position that Boeing is not entitled to relief.

[11] Section 552.325 provides that a "governmental body, officer for public information, or other person or entity that files suit seeking to withhold information from a requestor may not file suit against the person requesting the information." Tex. Gov't Code Ann. § 552.325 (West Supp. 2010). While this provision acknowledges that a private party may in certain instances file suit to prevent the disclosure of information, there is no indication that the legislature in enacting section 552.325 intended to confer a right upon private parties to prohibit disclosure of public information in cases where the exception asserted otherwise allows for voluntary disclosure by the governmental body. Instead, this section simply provides that in those cases in which a party seeks to prohibit disclosure on otherwise appropriate grounds, such as when a private party asserts that disclosure is "expressly prohibited by law or the information is confidential under law," the requestor may not be named as a defendant in the suit. *Id*.; *see* Tex. Gov't Code Ann. § 552.007.

21

Boeing asserts that the plain language of the exception protects any information that "would give advantage to a competitor or bidder" and, since the government has no competitors, the exception can only reasonably be construed as protecting private parties. While it may be true, at least to some degree, that the government is not a competitor or a bidder, it does not follow that the government has no interest in protecting competitive bidding on government contracts. While a disclosed bid might certainly give a bidder unfair advantage, i.e., the opportunity to underbid, the government has an interest in maintaining the integrity of the bidding process, which is furthered by section 152.104. *See, e.g.*, *Orion Research, Inc. v. EPA*, 615 F.2d 551, 554 (1st Cir. 1980) (holding that disclosure of bid to competitor under Freedom of Information Act would have "chilling effect" on willingness of potential bidders to submit bids in future). In any event, regardless of any private interest in protecting the material, the broad interpretation urged by Boeing ignores the import of section 552.007. *See City of Dallas*, 304 S.W.3d at 384 ("We presume that the Legislature intended all provisions of a statute to be effective, and that it intended a just and reasonable result."); *see also Birnbaum*, 994 S.W.2d at 776 (rejecting interpretation that PIA section 552.007 prohibits release of public information in which there is third-party property or privacy interest). Based on the plain language of the statute as a whole, the PIA cannot reasonably be interpreted in a manner that would permit Boeing to prohibit disclosure of the Lease information.

Boeing cites several federal cases for the proposition that, under an analogous provision in the Freedom of Information Act (FOIA), federal courts have prohibited the disclosure of similar information. *See Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008) (holding line-item pricing information in government contract was exempt from

22

disclosure); *McDonnell Douglas Corp. v. Dep't of the Air Force*, 375 F.3d 1182, 1194 (D.C. Cir. 2004) (same); *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 305 (D.C. Cir. 1999) (same). Because the Texas Legislature modeled the PIA after FOIA, federal precedent is persuasive, particularly where the statutory provisions mirror one another. *Texas Comptroller of Pub. Accounts v. Abbott*, ___ S.W.3d ___, No. 08-0172, 2010 Tex. LEXIS 890, at *16 (Tex. Dec. 3, 2010). However, we do not find the cases cited by Boeing persuasive for several reasons.

First, the federal cases cited by Boeing interpret and apply Exemption 4 of FOIA, which does not mirror section 552.104. Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged and confidential" and therefore is nearly identical to section 552.110 of the PIA, not section 552.104. 5 U.S.C.A. § 552(b)(4) (West 2007). Further, these cases do not support the proposition that a private party may necessarily preclude a governmental body from disclosing information that is excepted under the PIA. *See Canadian Commercial Corp.*, 514 F.3d at 39 (noting that Trade Secrets Act requires agencies to withhold information under Exemption 4); *McDonnell Douglas Corp.*, 375 F.3d at 1185 ("Exemption 4 does not itself prohibit an agency from disclosing commercial or financial information; it provides only that an agency is not compelled to disclose such information."); *McDonnell Douglas Corp.*, 180 F.3d at 305 (noting that if information falls within Exemption 4, "it simply means that the government is not compelled to disclose it"). Rather, these cases are consistent with United States Supreme Court's recognition, more than thirty years ago, that Congress "did not design the FOIA exemptions to be mandatory bars to disclosure." *Chrysler Corp. v. Brown*,

23

441 U.S. 281, 293 (1979).[12]  The Supreme Court unanimously held that a private party has no right under the FOIA to enjoin agency disclosure of public information.  *Id*. at 294  ("We conclude that Congress did not limit an agency's discretion to disclose information when it enacted the FOIA.  It necessarily follows that the Act does not afford Chrysler any right to enjoin agency disclosure.").

Boeing also cites two cases from other states, Arkansas and Kentucky, which Boeing asserts have provisions similar or identical to section 552.104 of the PIA.  In *Marina Management Services, Inc. v. Commonwealth of Kentucky*, a private party asserted that audited financial reports submitted to the Kentucky government were prohibited from disclosure under the Kentucky Open Records Act. 906 S.W.2d 318, 319 (Ky. 1995).  The Kentucky Supreme Court held that the government could not disclose the requested information.  However, the statutory provision at issue in that case exempted from disclosure "records confidentially disclosed to it, generally recognized as confidential or proprietary, which if openly disclosed would permit an unfair commercial advantage to competitors of the entity that disclosed the records."  Ky. Rev. Stat. Ann. § 61.878(1)(c)(1) (LexisNexis 2011).  This provision is analogous to section 552.110 of the PIA, not section 552.104.  Further, the Kentucky court held that the records at issue were deemed confidential.  *Id*.  The issue before this Court is whether a private party may assert section 552.104 in the absence of a finding that the information is confidential under law. We do not find this Kentucky case instructive on this issue.

---

[12] Federal cases brought by private parties claiming exemptions under the Freedom of Information Act (FOIA), such as the ones cited by Boeing, are procedurally brought under the Federal Administrative Procedure Act (APA) and challenge the agency's decision to release the information as arbitrary and capricious or not in accordance with the law under the APA. *See, e.g.*, *United Techs. Corp. v. U.S. Dep't of Defense*, 601 F.3d 557, 562 (D.C. Cir. 2010).

Similarly, the Arkansas Supreme Court held that a proposal for a contract with the Arkansas Department of Finance and Administration was excepted from disclosure under the Arkansas Freedom of Information Act. *Arkansas Dep't of Fin. & Admin. v. Pharmacy Assocs*., 970 S.W.2d 217, 221 (Ark. 1998). While the provision in that case is identical to section 552.104, the issue in the case was whether the state agency, not a private party, could claim the exception. *See id.* at 218 ("The question in this case is whether a state agency can claim the competitive-advantage exception under the Arkansas Freedom of Information Act . . . on behalf of the person who supplied the information."). Further, the information requested was bid information submitted for purposes of obtaining a government contract. *Id*. at 220. The court noted that the contract is re-bid every two years and competitors could use the information to improve their competitive position. *Id.* That concern is not applicable in this case.

Boeing's assertion that the Port is prohibited from releasing information that falls within the scope of Section 552.104 is contrary to the plain reading of the statute as whole. Under the plain language of the PIA, section 552.104 is a discretionary exception, which may be waived by the governmental body unless disclosure is "prohibited by law" or the information is "confidential under law." In this case, there are no trial court findings that would support the conclusion that disclosure of the Lease information is "prohibited by law" or that the Lease information is "confidential under law, " nor is there any evidence that would support such findings.

Accordingly, we hold that the trial court did not err in concluding that Boeing does not have standing to assert section 552.104 to prohibit the Port from disclosing the Lease information. We overrule Boeing's second issue on appeal. In light of this holding, we do not address Boeing's

third issue, whether the Lease information falls within the scope of section 552.104. *See* Tex. R. App. P. 47.1 (courts of appeal must hand down opinions that are as brief as possible while addressing those issues necessary to final disposition of appeal).

## CONCLUSION

Because the trial court did not err in concluding that the Lease information must be disclosed under section 552.022(a)(3), we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson;
  Concurring Opinion by Justice Pemberton

Affirmed

Filed:  March 9, 2012

26