# IN THE SUPREME COURT OF TEXAS

══════════
No. 12-1007
══════════

THE BOEING COMPANY AND THE GREATER KELLY DEVELOPMENT AUTHORITY
N/K/A THE PORT AUTHORITY OF SAN ANTONIO, PETITIONERS,

v.

KEN PAXTON, ATTORNEY GENERAL OF TEXAS, RESPONDENT

═══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════════

**Argued February 26, 2015**

JUSTICE DEVINE delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE WILLETT, JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE BROWN joined.

JUSTICE BOYD filed a dissenting opinion.

JUSTICE JOHNSON did not participate in the decision.

The Texas Public Information Act gives the public the right to access information the government collects. TEX. GOV'T CODE § 552.221. Although most of this information is available on request, the Act itself enumerates about sixty exceptions. *See generally id.* §§ 552.101–.154. One of these exceptions is the focus of this appeal.

The exception at issue purports to protect information "that, if released, would give advantage to a competitor or bidder." *Id*. § 552.104. The Attorney General, who is responsible for

maintaining uniformity in the Act's application, operation, and interpretation, *id*. § 552.011, has determined this exception protects the purchasing interests of a governmental body when conducting competitive bidding, but not those of a private party that competes in the process. The court of appeals has similarly concluded that the private party in this case lacked the right or standing to claim this exception because the exception is only for the government's benefit. 412 S.W.3d 1, 18 (Tex. App.—Austin 2012). We find no such limitation in the Act's text, however, and conclude that a private party may assert the exception to protect its competitively sensitive information. Concluding further that the information withheld will benefit the private party's competitors and thus "give advantage to a competitor" of the private party asserting the exception, we reverse the court of appeals' judgment and render judgment for the private party.

I

The Texas Public Information Act (PIA) "guarantees access to public information, subject to certain exceptions." *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers,* L.P., 343 S.W.3d 112, 114 (Tex. 2011). Public information includes information that is collected, assembled, or maintained by or for a governmental body. TEX. GOV'T CODE § 552.002(a). Such information is available by request unless an exception applies. *In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001).

Typically, a request for public information involves two parties, the governmental body holding the information and the citizen requesting it, and the governmental body must promptly ask the Attorney General for a ruling, if it believes an exception applies. TEX. GOV'T CODE § 522.301. The government, however, gathers a great deal of information from people and companies doing business in Texas, and some requests may also implicate the privacy or property interests of third

2

parties. When a citizen's request involves this type of information, the PIA permits the third party to raise the issue and any applicable exception to the information's disclosure with the Attorney General, or in district court, or both. *See id.* § 522.305(b) (permitting person whose privacy or property interests are implicated to appear in the Attorney General's administrative determination of the request); *id*. § 552.325 (recognizing third party's right to file suit seeking to withhold information from a requestor). The Boeing Company is such a third party here.

Boeing is the largest aerospace company in the world. About half of its business is building commercial jetliners, but it also competes for military contracts. As demand for new military aircraft has declined, this aspect of Boeing's business has shifted to maintaining and overhauling older aircraft for the military.

In 1995, Boeing was performing this work in Tulsa, Oklahoma, but was about to lose the space it leased from American Airlines there and needed to find a new facility. It conducted a nationwide search and ultimately selected San Antonio's Kelly Air Force Base as its new home. Kelly was scheduled for closure under the Department of Defense's Base Realignment and Closure program and thus available to house Boeing's commercial-refit facility for servicing heavy-lift military aircraft.

To facilitate Kelly's transition to a private commercial hub, the City of San Antonio created the Greater Kelly Development Authority, later renamed the Port Authority of San Antonio. The Port is a tax-exempt, self-sustaining enterprise, incorporated by the city as a separate political jurisdiction. It continues to manage and redevelop the former air force base.

In 1998, Boeing signed a lease with the Port for 1.3 million square feet at Kelly Air Force Base for a term of twenty years.[1] The selection of Kelly and subsequent lease negotiations involved a substantial commitment of Boeing's time and resources. According to Boeing, the company devoted two years and a team of twelve employees and additional outside consultants to evaluate and negotiate a competitive agreement that would enable Boeing to compete for government aircraft contracts during the lease's twenty-year term.

To induce Boeing's relocation, the Port made improvements to the former air force base with funds borrowed from the city. Boeing's decision to move to Kelly was an instrumental part of the base's transformation. Upon signing the lease, Boeing became the Port's largest tenant. It remains so today, employing about 1,500 personnel. Boeing's relocation has also drawn other businesses to San Antonio, and its payments to the Port support the Port's ability to repay its debt to the city.

Several years after signing the Kelly lease, a former Boeing employee, Robert Silvas, submitted a Public Information Act request to the Port for various Boeing corporate information, including the lease. The Port notified Boeing of the request and its right to seek relief from the Attorney General. Boeing provided a redacted version of the lease to Silvas and filed objections with the Attorney General as to the redacted parts. Boeing asserts that the information withheld is

---

[1] Boeing informs us that it recently signed a new lease with the Port for a term of fifteen years effective December 23, 2014.

4

competitively sensitive information regarding its overhead costs at Kelly that would give advantage to it competitors.[2]

According to Boeing, a competitor could take the detailed information in Boeing's lease and determine Boeing's physical plant costs at Kelly, allowing the competitor to underbid Boeing on government contracts by enticing another landlord to offer a lower lease rental. Because of the competitive nature of the military-refit market, Boeing submits that it takes special care to safeguard certain information in the lease, including rental rates, share of common maintenance costs, insurance coverage required by the Port, liquidated damages provisions, and lease incentives. The information is not publicly available, and only about a dozen of Boeing's 165,000 employees have access to it.

After considering Boeing's objections, the Attorney General concluded in an Open-Records Letter Ruling that none of the withheld information was exempt from disclosure under the Act. Boeing promptly sought declaratory and injunctive relief from the ruling in the Travis County district court, joining the Attorney General and the Port Authority.[3] The parties agreed to a temporary injunction, and the case was then tried to the court.

The trial court denied Boeing's requested relief and ordered the Port to provide the withheld information. In findings of fact and conclusions of law, the court determined that the information

---

[2] Information withheld by Boeing included: the percentage used to calculate Boeing's share of the common maintenance costs, the actual dollar figure for the insurance limits Boeing agreed to carry, the percentage used to calculate Boeing's penalty for early termination, the actual dollar caps on incentives Boeing might achieve for meeting goals for contracting with certain small businesses, and the actual numbers used to calculate Boeing's future rent.

[3] The Public Information Act forbids "suit against the person requesting the information" and so Boeing did not join the requestor. TEX. GOV'T CODE § 552.325(a). The requestor has the right to intervene in the suit, but Silvas has not done so. *Id*.

was not exempt under section 552.110 of the Act because it was not Boeing's proprietary information, a trade secret, or otherwise the type of commercial or financial information to which that exception applied.[4] The court also concluded that Boeing did not have standing to assert section 552.104's disclosure exception, the exception that protects certain information related to competition or bidding. Boeing appealed, and the court of appeals affirmed the trial court's judgment. 412 S.W.3d 1, 18 (Tex. App.—Austin 2012).

## II

Boeing complains that the court of appeals erred in failing to apply section 552.104 to its circumstances. It argues that the information it redacted from the lease contains financial or commercial information that would, if disclosed, put Boeing at a competitive disadvantage when bidding on future large government contracts. Boeing claims that the information is exempt because the Act excepts from mandatory disclosure "information that, if released, would give advantage to a competitor or bidder." TEX. GOV'T CODE § 552.104(a).[5]

---

[4] The exception reads:

§ 552.110. Exception: Confidentiality of Trade Secrets; Confidentiality of Certain Commercial or Financial Information
　　(a) A trade secret obtained from a person and privileged or confidential by statute or judicial decision is excepted from the requirements of Section 552.021.
　　(b) Commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained is excepted from the requirements of Section 552.021.

[5] The exception reads:

§ 552.104. Exception: Information Related to Competition or Bidding
　　(a) Information is excepted from the requirements of Section 552.021 if it is information that, if released, would give advantage to a competitor or bidder.
　　(b) The requirement of Section 552.022 that a category of information listed under Section 552.022(a) is public information and not excepted from required disclosure under this chapter unless expressly confidential under law does not apply to information that is excepted from required disclosure under this section.

The Attorney General, on the other hand, argues that this exemption does not apply to third parties, like Boeing, and, in accordance with his office's previous interpretations of the provision, contends that this exception is exclusively for the government's benefit. *See* Tex. Att'y Gen. ORD–592, at 8–9 (1991) (determining that section 552.104's exception applies only to governmental entities); Tex. Att'y Gen. ORD–541, at 4–7 (1990) (same).

The court of appeals adopted the Attorney General's view of the provision, agreeing that Boeing lacks standing to invoke the exception. 412 S.W.3d at 18. One member of the panel, however, did not agree with this part of the court's decision. *See id.* at 21 (Pemberton, J. concurring) (concluding that section 552.104 applies to both the government and private parties). Unlike the majority, this justice found nothing in section 552.104's text to support the court's conclusion that the exception was only for the government's benefit:

> Section 552.104 is addressed simply to "information that, if released, would give advantage to a competitor or bidder" without elaborating as to whether it is intended to protect the interests of "competitors" and "bidders," a governmental body whose contract or business is being sought by "competitors" or "bidders," or both. On its face, section 552.104 would seem to implicate the interests of both.

*Id*. at 20 (internal citation omitted). We agree that the provision on its face does not limit the exemption to the government.

The Attorney General argues, however, that we must read this exemption in the context of the Act as a whole, which seeks to balance governmental transparency with third-party privacy and confidentiality interests. Understanding how that balance is embodied in any given provision, the

Attorney General submits, requires that we consider how a given interpretation affects the rest of the Act. Reading section 522.104 in isolation and according to its minimalist text would, according to the Attorney General, create a super exception "so lenient that it would override the other exceptions." The better reading then is to harmonize the exception with the whole Act as the Attorney General did in previous opinions limiting section 552.104's exception to governmental bodies. Thus, the Attorney General argues that the exception (1) protects the government's interest in the competitive bidding process, (2) is subject to exhaustion and forfeiture rules, and (3) may only be invoked by the governmental body in its discretion.

Boeing responds that the Attorney General has not harmonized the Act's provisions so much as rewritten them. Nothing in the Act bars private standing to prevent public disclosure generally and nothing in section 522.104 specifically limits its application to the government. Rather, the Act generally, and as a whole, grants standing to any "person who claims to be the victim of a violation" of the Act. TEX. GOV'T CODE § 552.3215(a)(1), (b), (e). Boeing argues it is that "person" because the Attorney General has ordered the release of its protected information, information exempted from disclosure if it "would give advantage to a competitor." *Id*. § 552.104(a). Finally, Boeing submits that if section 552.104 is too lenient for the Attorney General as written, it is for the Legislature to rewrite the statute, not the Attorney General under the guise of a "better reading."

The concurring opinion in the court of appeals also rejected the Attorney General's reading of this provision. Looking at the exception's text and its place in the Act as a whole, the concurring justice concluded that Boeing had the right (or standing) to protect its own privacy or property interests implicated by an open-records request through the assertion of section 552.104's exception

in the judicial remedy afforded to private parties under the Act, with or without its participation in the open-records process. 412 S.W.3d at 21 (Pemberton, J., concurring). The justice nevertheless concurred in the court's judgment because he found the evidence inconclusive as to whether "disclosure of the information '*would* give advantage' to Boeing's competitors, as required by section 552.104." *Id*. at 19 (emphasis in original).

The majority, however, analyzed the case differently. It viewed the open-records request as one involving a disagreement or conflict of interest between the Port and Boeing, framing the issue as "whether the PIA affords a private party, like Boeing, the right to enjoin a governmental body from disclosing public information on grounds that it is excepted from disclosure under section 552.104." *Id*. at 12. The court reasoned that section 552.104 was "a purely discretionary exception" that the Port was free to waive because the protected information was neither "confidential under law" nor "prohibited by law" from disclosure. *Id*. at 13; *see* TEX. GOV'T CODE § 552.007 (permitting governmental body to voluntarily disclose "part or all of its information [] to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law"). As a permissive exception, the court reasoned further that, regardless of Boeing's rights under section 552.104, any decision to waive the disclosure exception belonged solely to the governmental body, which in this instance waived its protection by not presenting the exception to the Attorney General in the open-records administrative process. 412 S.W.3d at 13. In short, the court adopted the Attorney General's construction, interpreting the exception as a right exclusive to the governmental body that could be waived if not raised before the Attorney General in the open-records process.

The court of appeals' view of Boeing and the Port as antagonists, however, misstates the nature of the underlying dispute. The Port has never indicated a desire to release this information over Boeing's objection but has instead deferred to Boeing to protect its own interests. The issue then is not whether Boeing can enjoin the Port from releasing Boeing's private information (an issue we need not decide) but rather whether Boeing has the right under the Act to assert its own interests in protecting that information. Although the Port took no position on section 552.104's application before the Attorney General, it now expressly opposes releasing the information. But again, the court of appeals interprets this exception as the governmental body's exclusive right—a right that can be waived if not raised before the Attorney General during the open-records process.

Indeed, as a general rule, the Public Information Act requires a governmental body to raise and argue any applicable disclosure exception to the Attorney General as a prerequisite to judicial review. *See* TEX. GOV'T CODE §§ 552.301-.303 (describing procedure for a governmental body to request an Attorney General decision on one of the Act's exceptions); *see also id*. §§ 552.324-.325 (providing for review of the Attorney General's decision). This general rule does not apply, however, when the requested information implicates another person's privacy or property interests. *Id*. § 552.305(a), (c). Under those circumstances, the "governmental body may, but is not required" to raise specific exceptions. *Id*. § 552.305(c). The governmental body may also defer to the person whose interests are at stake and that person may, in turn, "submit in writing to the attorney general the person's reasons why the information should be withheld or released." *Id*. § 552.305(b). Thus, when a third party's interests are at issue, a governmental body need not raise an exception

10

"involving the property or privacy interests of another person" before the Attorney General as a prerequisite to raising the issue in a suit for judicial review. *Id.* § 552.326.

Because the Port was not required to raise the exception before the Attorney General, its failure to do so did not affect a waiver as to Boeing's private information. TEX. GOV'T CODE § 552.305. The Port has simply deferred to Boeing to protect its own interests. The concurring justice found this entirely permissible, observing that the statute "reflects legislative recognition that third parties with interests implicated by a request [will] often have the most at stake and be in the best position to argue that the information is protected from disclosure." 412 S.W.3d at 21.

Boeing certainly could have petitioned the Attorney General to exempt its private information from disclosure under section 552.104, but the Act does not require that it do so. *See* TEX. GOV'T CODE § 552.305(b) (stating that an affected third party "may" petition the Attorney General to protect its information). The Act only requires a governmental body to petition the Attorney General to exempt information from disclosure and even that is not required when a private party's information under section 552.104 is in issue. *Id.* §§ 552.301(a), 552.305(c). The court of appeals was therefore mistaken to suggest that the Port's inaction here amounted to either a waiver of the exception or acquiescence in the disclosure of the information. *See* 412 S.W.3d at 13.

That the Port has not voluntarily waived the exception, however, does not answer the central question of Boeing's standing or right to raise the exception itself. As to that issue, the Attorney General argues that we should defer to his office's longstanding interpretation of section 552.104 because "maintain[ing] uniformity in application, operation, and interpretation" of the PIA is committed to his office by statute. *See* TEX. GOV'T CODE § 552.011. While the Attorney General's

11

interpretation of the Act is entitled to due consideration, as with other administrative statutory constructions, such deference must yield to unambiguous statutory language. *See City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010) (rejecting Attorney General's interpretation of PIA provision).

The Office of Attorney General has long taken the position that section 552.104 grants third parties like Boeing no protection and no standing to object; it can be invoked only by governmental entities and thus can be waived by them. But no statutory language limits section 552.104 to the government. On the contrary, the statute treats section 552.104 as it does other provisions that potentially implicate "a person's privacy or property interests." TEX. GOV'T CODE § 552.305(a). In fact, in the PIA provision aptly titled, "Information Involving Privacy and Property Interests of Third Party," the Legislature expressly includes section 552.104's disclosure exception as one of several examples that might involve third party privacy or property concerns. *See id.* § 552.305(a) ("In a case in which information is requested under this chapter and a person's privacy or property interests may be involved, including a case under Section 552.101, 552.104, 552.110, or 552.114 . . .").

Boeing submits that no reason exists to include section 552.104 as an example here if a third party like itself has no right to assert the exception. The concurring justice similarly read the inclusion of section 552.104 here, along with the Act's apparent deference to third-party privacy and property rights, and its provision for judicial review of such rights as indicative of Boeing's right to assert the exception. After discussing the PIA's pertinent features, the concurrence concluded:

12

Considering this statutory scheme, I would hold that the Legislature intended private parties whose "competitors" or rival "bidders" would be "advantaged" by disclosure to have standing or the right to protect their interest in the information protected by section 552.104 through the judicial remedy provided in section 552.325.

412 S.W.3d at 21 (Pemberton, J., concurring). That is our view as well. Accordingly, we hold that section 522.104's exception applies to both the government and private parties and may be invoked by either to protect the privacy and property interests of a private party in accordance with its terms.

### III

By its terms, section 552.104 exempts from disclosure information that, "if released, would give advantage to a competitor or bidder." TEX. GOV'T CODE § 552.104(a). Because the trial court concluded that Boeing lacked standing to assert this exception, it did not determine whether the information at issue would give advantage to Boeing's competitors.[6] Boeing argues, however, that it will and that it conclusively established the exception's application to the withheld information.

The evidence at trial demonstrated the intense competition that exists in the aerospace industry for large government contracts like those that sustain Boeing's operations at Kelly. The only evidence on the withheld information's value came from a Boeing manager with long experience in bidding for military projects. The manager testified that most components in billion-

---

[6] The court also concluded that section 522.110(b) could not be used to exclude this information from disclosure. This latter provision protects a person's commercial or financial information if its disclosure would cause that person "substantial competitive harm." TEX. GOV'T CODE § 552.110(b). At the time of this request, the exception did not protect such information unless the information was "expressly confidential under other law"— meaning law outside the Act itself. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 5, 1999 Tex. Gen. Laws 4500, 4501-02. Amendments to the Act in 2011 repealed the "other law" requirement and presently all exceptions in the Act apply without regard to the previous "other law" limitation. *See* Act of June 17, 2011, 82nd Leg. R.S., ch. 1229, § 2, 2011 Tex. Gen. Laws 3271, 3271; *see also* TEX. GOV'T CODE § 552.022(a). The exception in section 522.104 was not subject to the "other law" limitation at the time of this request and thus the 2011 Amendments have no relevance as to it. *See* TEX. GOV'T CODE § 522.104(b) (excluding exception from this limitation).

dollar military-aircraft bids are set by federal standards dictating the work to be performed, parts to be used, and hourly wages and fringe benefits to be paid. As both the work required and the labor rates are standardized, the primary difference between competitors and their bids is overhead included in the final bid price—the cost of the huge hangars, runways and other physical assets needed to service large military aircraft. In the competitive military re-fit market, contracts can be awarded on bid differences of less than one percent.

Because bid margins are so thin, Boeing protects certain financial aspects of its lease with the Port, including rental rates, its share of common maintenance costs, insurance coverage required by the Port, liquidated damages provisions, and lease incentives. Boeing protects future overhead figures and its components even though the Port must, in connection with public audits, disclose gross amounts that Boeing has paid in the past. Boeing's concern is that the disclosure of the additional details in the lease concerning its overhead will enable other military-service contractors to reverse engineer Boeing's own bid, the better to undercut it. Indeed, this has already occurred as Northrop Grumman Corporation in Lake Charles, Louisiana, underbid Boeing by about one percent and now has the contract for one heavy-lift aircraft that Boeing formerly serviced at Kelly.

Although the trial court filed findings of fact and conclusions of law, it did not find that this information would give no advantage to Boeing's competitors. Boeing submits that had such a finding been made, it would have no evidentiary support because as Boeing argues: "Knowing some, if not most, of a competitor's cards is an advantage over knowing none of them." Boeing concludes that it proved what the statute requires—that disclosure would give an advantage to its competitors.

14

The Attorney General contends, however, that Boeing's theory of "advantage" is too attenuated and hypothetical to satisfy section 552.104, even assuming the exception applies to a third party like Boeing. Moreover, the Attorney General contends that this exception requires a showing of specific competitive harm in particular ongoing competitive bidding, and no evidence shows that this is the case here.[7] Tex. Att'y Gen. ORD–541, at 4 (1990); Tex. Att'y Gen. ORD–514, at 2 (1998). Finally, the Attorney General submits that no evidence demonstrates that the release of this information will affect Boeing's lease arrangement with the Port because its space at Kelly is so unique that only one other aviation company in the world, Europe's Airbus, could fully utilize its capacity, and further because the Port has no apparent interest in finding a new tenant for Kelly.

But Boeing's concern is not that Airbus or any other competitor may take away its lease with the Port. Its concern is that another city or state will choose to rent its abandoned air base to a Boeing competitor at rates that undercut the Port. Boeing submits that that is what makes this case unique—it's not just Boeing's competitors that would gain advantage if this information is publicly disclosed, it is also competitors of San Antonio and the Port.

Boeing describes the information withheld as "minimal redactions—literally one attachment, two tables and a few sentence fragments." Boeing has withheld the percentage used to calculate Boeing's share of the common maintenance costs, the actual dollar figure for the insurance limits Boeing agreed to carry, the percentage used to calculate Boeing's penalty for early termination, a table showing the actual dollar caps on incentives Boeing might achieve for meeting goals for

---

[7] The dissent here similarly argues that Boeing has at best only demonstrated that this information "could give advantage to a competitor," not that it "would give advantage." ___ S.W.3d at ___ (Boyd, J. dissenting).

contracting with certain small businesses, and an attachment with the actual numbers used to calculate Boeing's future rent, month to month, quarter to quarter, and year to year.

The information, which the court of appeals ordered disclosed, could not be disclosed by the Air Force under the federal Freedom of Information Act. The D.C. Circuit has rejected three such requests in the last sixteen years. *See Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 38 (D.C. Cir. 2008); *McDonnell Douglas Corp. v. United States Dep't of the Air Force*, 375 F.3d 1182, 1185 (D.C. Cir. 2004); *McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*, 180 F.3d 303, 304 (D.C. Cir. 1999); *see also Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 528-29 (D.C. Cir. 1979).

Although the Attorney General urges that 552.104 only applies to "ongoing competitive bidding," nothing in the exception's text says as much. While disclosing bids after a contract award may rarely give competitors any advantage, the federal cases indicate that the aerospace industry is different because the disclosure of current contract prices gives competitors a distinct advantage by telling them precisely how to undercut the current contractor when contracts are re-bid. *Canadian Commercial Corp.*, 514 F.3d at 42.

The court of appeals speculated, however, that no harm would actually occur, pointing to the "myriad of other factors" that might influence future Boeing bids such as utilities, indirect labor, management, and profits. 412 S.W.3d at 11. But Boeing points out that no evidence exists in the record that these other cost factors would differ much between competitors or yield a competitive advantage. The justices apparently assumed these factors were important based on their own general business knowledge. But the record indicates that competition among aerospace firms is unlike other

16

competitive business ventures.[8]  In this industry a few giant companies compete for a handful of billion-dollar contracts and thus have a much higher incentive to watch their competitors closely. In that context rental overhead is not simply one of a myriad of factors.  Moreover, the test under section 522.104 is whether knowing another bidder's overhead costs would be an advantage, not whether it would be a decisive advantage.  This is the test the Attorney General has applied to the government, and the test Boeing claims should be applied to it as well.

For example, the Attorney General recently ruled that information concerning the Governor's marketing meetings with businesses in other states was exempted from disclosure under section 522.104.  Tex. Att'y Gen. OR2013-08386.  The Governor represented that his office "is competing against other states attempting to recruit businesses to relocate or expand," and that release of the information "would disadvantage Texas by permitting other states to directly approach these entities with competing incentives."  *Id*. at 2.  In contrast, Boeing submits that its record shows in much more detail its competitors' identities and how they may use the information in future bidding. Although Boeing is a private party, section 522.104 does not state different protection standards for businesses and governors.

The record establishes that Boeing's work for the federal government is continually re-bid, and that contracts have been lost to competitors over as little as one percent.  The record also

_____

[8]  David W. Bouse, a thirty-year Boeing employee and member of its new-business-opportunities leadership team, testified about his long experience in competing for business in the aerospace industry and the value Boeing's competitors would put on learning the details of Boeing's overhead costs at Kelly.  He also testified about recent and future contract opportunities for Boeing's facility at Kelly.  Bouse's testimony was specific as to a recently completed bid that had brought an additional federal contract to Kelly, but he did not want to give specifics as to future opportunities on which Boeing might bid.

demonstrates that the major bid component that a competitor does not know is the contractor's overhead costs—precisely the information Boeing wishes to withhold. No reasonable trier of fact could conclude that Boeing has no competitors, that the Defense Department won't re-bid its contracts, or that the physical plant is not the biggest variable cost in such bids. The undisputed evidence allows only a single logical inference—that the information at issue "if released would give advantage to a competitor or bidder." TEX. GOV'T CODE § 522.104(a); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 814 (Tex. 2005).

* * * * *

Because Boeing has demonstrated that the information at issue is competitively sensitive and will give advantage to its competitors if released and because section 552.104's exception applies to both the government and to private parties, Boeing has the right to protect its own privacy and property interest through the judicial remedy section 552.325 provides. TEX. GOV'T CODE §§ 522.104, 552.325. The court of appeals' judgment is accordingly reversed and judgment is rendered for Boeing sustaining its objection to the mandatory release of this information.

_____
John P. Devine
Justice

Opinion Delivered: June 19, 2015

18