ACCEPTED
03-15-00044-CV
6920036
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/14/2015 5:37:53 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00044-CV

# In the Court of Appeals for the Third Judicial District Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/14/2015 5:37:53 PM
JEFFREY D. KYLE
Clerk

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
*Appellant,*

v.

MAURIE LEVIN, NAOMI TERR, AND HILARY SHEARD,
*Appellees.*

On Appeal from the
201st Judicial District Court of Travis County, Texas

## APPELLANT'S REPLY BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney
General

SCOTT A. KELLER
Solicitor General

RICHARD B. FARRER
Assistant Solicitor General
State Bar No. 24055470

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1823
Fax: (512) 474-2697
richard.farrer@texasattorneygeneral.gov
COUNSEL FOR APPELLANT

ORAL ARGUMENT REQUESTED

TABLE OF CONTENTS

Index Of Authorities.................................................................. iii

Introduction ............................................................................... 1

Argument....................................................................................3

    I.    Plaintiffs' Defense Of The District Court Is Founded On Erroneous Assumptions And Flawed Predicates. ..................3

        A.    Plaintiffs Misunderstand *Cox* And Advocate An Erroneous Standard For The Physical-Safety Exception....................................................................5

            1.    *Cox* Addresses Requests For Disclosure Of Specific Information; There Is No All-Or-Nothing Disclosure Scenario. .............................5

            2.    *Cox* Does Not Require An Actual Threat Or Plot To Commit A Violent Act. ...........................9

            3.    *Cox* Requires Deference To Law-Enforcement Assessments Of The Probability Of Harm. ..........................................10

        B.    Plaintiffs' Invocation Of Past Attorney General Opinions Is Unavailing. ...............................13

        C.    Plaintiffs' Arguments Are Not Improved By Their Brief's Erroneous Characterization Of TDCJ's Motives. .......................................................15

        D.    Plaintiffs' Mistaken View Of The Physical-Safety Exception Infects Their Expert's Opinion. ..................17

    II.    Plaintiffs Offer No Meaningful Response To The Need For A Remand In The Event The Court Determines TDCJ Is Not Entitled To Summary Judgment. ...................19

Prayer ................................................................................19

Certificate of Service ...........................................................21

Certificate of Compliance......................................................22

# INDEX OF AUTHORITIES

## Cases

*Boeing Corp. v. Paxton,*
No. 12-1007, 2015 WL 3854264 (Tex. June 19, 2015) ......... 2, 16, 17

*Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers L.P.,*
343 S.W.3d 112 (Tex. 2011) ..................................... 2, 6, 7, 8, 10, 11

## Other Authorities

Tex. Att'y Gen. ORD-673 (2001) ........................................................... 13

## INTRODUCTION

Plaintiffs mistakenly label the issues in this case as "'small'" because a new amendment to the Texas Public Information Act (PIA) prospectively exempts from future disclosure information revealing the identity of execution-drug providers. Plaintiffs' Br. 44. That label merely begs the ultimate question: does a legitimate public-safety concern over the release of a small portion of the requested information permit TDCJ to withhold only that portion of the information—the supplier's identity—while releasing every other shred of requested information? The ramifications of the district court's erroneous ruling, in any event, will be anything but "small," because the standard governing when and how a government agency can withhold sensitive information remains at issue.

Plaintiffs posit a standard for the physical-safety exception that distorts the PIA's balance of public safety and access to information. According to Plaintiffs, the public's right to information demands that sensitive information cannot be withheld due to legitimate concerns about physical harm, absent an actual identified threat or plot to commit a violent act. While there is no dispute that public access to information

is important, that interest must give way to public safety where DPS or other law enforcement has ample grounds to believe a threat to public safety exists. That Plaintiffs' standard would distort the PIA balance is demonstrated by a recent decision in which the Texas Supreme Court held that information implicating third-party privacy or property interests may be withheld from public disclosure if disclosure would do no more than "give advantage to a [business] competitor." *Boeing Corp. v. Paxton*, No. 12-1007, 2015 WL 3854264, at *7 (Tex. June 19, 2015). Plaintiffs advocate a disclosure standard that does not reflect current PIA jurisprudence.

Neutral law-enforcement warnings about a specific public-safety threat should not be subject to a battle of the experts in PIA cases, as Plaintiffs' advocate. That would leave the public's safety hanging in the balance. So long as law enforcement's concerns relate to specific pieces of requested information, and are not merely "vague assertions of risk," they should be heeded. *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers L.P.*, 343 S.W.3d 112, 119 (Tex. 2011).

Notwithstanding Plaintiffs' implications to the contrary, this is a very important appeal that implicates serious public-safety concerns. The

circumstances of this case—as well as inevitable future scenarios involving PIA requests for information that, if released, would foster a substantial risk of physical harm—call for the Court to reverse the district court and clarify the physical-safety exception.

## ARGUMENT

### I. PLAINTIFFS' DEFENSE OF THE DISTRICT COURT IS FOUNDED ON ERRONEOUS ASSUMPTIONS AND FLAWED PREDICATES.

Plaintiffs' brief is founded on a series of invalid assumptions and predicates, which Plaintiffs use to set up and knock down arguments that do not accurately reflect either TDCJ's position or the contours of the physical-safety-exception as outlined in *Cox*. Under a faithful application of *Cox*, TDCJ satisfied the physical-safety exception, as a matter of law. *See* TDCJ Br. 31-47.

This appeal cannot hinge on three pieces of evidence that must demonstrate on their own an actual threat or plot to commit a violent act against a compounding pharmacy, as Plaintiffs contend. *See* Plaintiffs' Br. 18-26. What the evidence should do—and does—is demonstrate that the release of requested information entails a substantial threat of physical harm. The evidence does that here because it includes a legitimate law-enforcement safety concern about possible violence that is

3

connected by evidence to the release of specific information. The evidence that achieves that result is far more robust than is required, and it includes:

- a firestorm of hate mail to the Woodlands pharmacy after its identity was revealed as a supplier of execution drugs;
- the exploding-head blog posting, which juxtaposes a violent graphic with text identifying a compounding pharmacist;
- testimony from Director Livingston expressing long-standing safety concerns at TDCJ about compounding pharmacies that supply execution drugs;
- Livingston's testimony about the recent escalation of threats of harm in connection with executions, and about increased dangers in the overall criminal-justice environment;
- the law-enforcement response to the firestorm surrounding the Woodlands pharmacy, which included dispatching officers to ensure protests were not violent;
- the Humez email, which (among other things) notes the obvious danger of violence and connects it to the revelation of the pharmacy's identity;
- the FBI considered the threat environment at the Woodlands pharmacy serious enough to investigate Humez;
- Director Livingston considered the Humez email an actual threat;
- Director of DPS McCraw's testimony, including that the fervor surrounding the death penalty warns of possible violence;
- testimony from McCraw about the vulnerability of the compounding pharmacy;
- testimony from McCraw explaining that acts of violence are not necessarily preceded by actual threats;
- testimony from Cunningham about policy issues that invoke passion, and comparing anti-death-penalty advocates to pro-life and animal-rights groups;
- testimony from Cunningham about violence in connection with prison issues as well as the Internet's tendency to

4

> increase the fervor surrounding a topic and access to methods and materials for those intent on violence;
> - testimony from Cunningham confirming that acts of violence are not necessarily preceded by actual threats or warnings;

TDCJ Br. 3-11, 31-47.

## A. Plaintiffs Misunderstand *Cox* And Advocate An Erroneous Standard For The Physical-Safety Exception.

As discussed in TDCJ's opening brief and confirmed by Plaintiffs' response brief, Plaintiffs' arguments misunderstand *Cox* and the physical-safety exception. *See id.* 47-51.

### 1. *Cox* Addresses Requests For Disclosure Of Specific Information; There Is No All-Or-Nothing Disclosure Scenario.

*Cox* does not mandate an all-or-nothing disclosure standard under which all information on a given topic is either subject to disclosure or may be withheld. Plaintiffs, however, argue as though the physical-safety exception is an all-or-nothing inquiry. If there is no specific, verifiable threat of violence, Plaintiffs argue, there can be no substantial threat of physical harm.[1]

---

[1] *See e.g.*, Plaintiffs' Br. vii (arguing, "no history or actual violence against a supplier of Lethal Injection Drugs has ever occurred or been threatened"); *id.* at 4 (arguing, "there has never been any violence, threat or physical harm against any supplier of [execution drugs] in Texas"); *id.* at 6 (arguing, "no evidence that once the Woodlands' identity became public that there was ever any physical harm or any risk of physical harm (substantial or otherwise) against the pharmacy"), *id.* (noting, "no evidence in

5

Plaintiffs misread *Cox*, which requires courts to "closely examine" each piece of requested information to determine whether disclosing it would substantially threaten physical harm. *Cox*, 343 S.W.3d at 118-19. Plaintiffs, in contrast, focus on select evidence and ask if that evidence amounts to an actual threat to commit violence; only if it does would Plaintiffs apparently then concede the information (presumably, all information) could be withheld. *See* Plaintiffs' Br. 18-25; *see also* note 1 *supra*. Plaintiffs' argument is particularly misguided given that TDCJ has released *all requested information* except information identifying the compounding pharmacy and pharmacist. TDCJ has not announced a policy refusing to disclose anything on the topic of executions. Yet Plaintiffs' briefing gives that impression.

---

the record that any violence or threats occurred during an October 9, 2013, vigil"); *id.* at 9 (arguing, "the documents upon which TDCJ and DPS rely do not contain any discernible direct threats or any readily identifiable targeted threats against any pharmacies or individuals connected to them or to the TDCJ (quotation marks omitted)); *id.* at 9 (arguing that the exploding-head blog has no "wording [that] could be loosely interpreted as threatening" (quotation marks omitted)); *id.* at 10 (arguing Humez "did not make any actual threats" (quotation marks omitted)); *id.* at 16 ("There must be an actual, substantial threat of physical harm . . . ."); *id.* at 17 ("[T]he [substantial threat of physical harm] must be based upon some past conduct that legitimately leads to the conclusion of an actual substantial threat of actual physical harm."); *id.* at 30 n.9 (arguing there is not substantial threat of physical harm to President Obama because a particular Internet posting was harmless); *id.* at 39 (indicating that TDCJ's arguments fall short because they do not "establish[] any kind of actual violence").

*Cox* explains that "[t]he dividing line between disclosure and restraint must be determined by proof" in the form of "detailed evidence or expert testimony" connecting law enforcement's safety concerns with specific requested information. *Cox*, 343 S.W.3d at 119. It is erroneous to argue, as Plaintiffs' brief repeatedly does, that there can be no substantial threat of physical harm (presumably for all purposes) simply because TDCJ does not point to an existing plot to commit a violent act at a compounding pharmacy. *See* note 1 *supra*. It is equally erroneous to require a past plot or act of violence. *See* Plaintiffs' Br. 17 ("[T]he [substantial threat of physical harm] must be based upon some past conduct that legitimately leads to the conclusion of an actual substantial threat of actual physical harm."); *id*. at 30 n.9 (arguing no substantial threat of physical harm to President Obama because a particular Internet posting was harmless). Indeed, an assessment of the probability of harm, as contemplated by *Cox*, would be of little use if it could only be invoked after an actual existing threat or plot was known.

An example from Plaintiffs' brief illustrates this pervasive error. Plaintiffs raise an incident that occurred after Osama bin Laden was killed and a troubling online posting noted, "I hope President Obama has

beefed up security so he can be protected if anyone comes after him." *Id.* Because an investigation revealed the posting was made by a harmless middle-school child, Plaintiffs announce the (largely irrelevant) conclusion that the *posting itself* was not a substantial threat of physical harm. *See id.*

The conclusion Plaintiffs' draw from their Obama example demonstrates the depth of their misunderstanding. If law enforcement expressed concern that the President's life was at significant risk following the bin Laden raid, then a request for information revealing specific details about the President's security arrangements should fall within the physical-safety exception as a matter of law. *Cox*, 343 S.W.3d at 118-19 (finding that specific information about "the number of guards protecting the governor" qualified for the exception because it could give a potential and as-yet unidentified person who might be "intent on harming" the governor "the means to accomplish that goal"). Plaintiffs' formulation of the exception, however, apparently would not permit that result. *See* Plaintiffs' Br. 30 & n.9 (arguing that the proper inquiry is whether any "bit of information" "is an actual threat" and concluding that the child's post "was not a STPH [substantial threat of physical harm].").

8

Likewise, in this case there is ample evidence specifically connecting the single item of requested information to law enforcement's concerns about violence. Whether there is, for example, an actual bomb threat or currently existing plot against a provider of execution drugs cannot be the sole issue. TDCJ has demonstrated through evidence how law enforcement's assessment of a high-threat environment is connected to the disclosure of the identity of the supplier of pentobarbital. *See* TDCJ Br. 31-47. The physical safety exception, as explained in *Cox*, is therefore satisfied. *See* TDCJ Br. 31-47.

### 2. *Cox* Does Not Require An Actual Threat Or Plot To Commit A Violent Act.

*Cox* explains—contrary to Plaintiffs' arguments—that the threat of physical harm arises from the *disclosure of specific information*; *Cox* does not provide, as Plaintiffs advocate, a standard for determining whether or not there is an actual threat or plot to commit a violent act. *Cox* also does not require proof of an actual threat or plot to commit physical violence as a prerequisite to shielding specific information from disclosure. It does not require evidence that such a threat is likely or even that violence is likely. Nor does it require evidence of a past incident of violence by a particular person or group.

*Cox* requires a substantial threat of physical harm, which can be demonstrated through a DPS or other law-enforcement expert's assessment of the probability of harm, as well as expert testimony or other evidence that shows how the release of specific information implicates that assessment of harm or otherwise shows a substantial threat of physical harm. TDCJ has met that burden. *See* TDCJ Br. 31-47.

### 3. *Cox* Requires Deference To Law-Enforcement Assessments Of The Probability Of Harm.

Plaintiffs' brief essentially ignores that the "probability of harm" in a given circumstance is best assessed by "law enforcement experts" or "DPS," and that law-enforcement assessments on that topic must receive deference from courts. *Cox*, 343 S.W.3d at 119. In a sense, Plaintiffs argue that because TDCJ has not pointed to a specific violent act or existing plot to commit one at a compounding pharmacy, there *never* will be one. Plaintiffs rail against deferring to law enforcement warnings about public-safety threats because they disagree with DPS's assessment. But that these plaintiffs disagree with DPS's assessment of an unacceptably high probability of harm cannot change the fact that, under *Cox*, that determination is for DPS to make.

10

*Cox* does not contemplate a "battle of experts" in every case to resolve the precise degree of probability of harm presented by a given situation. Instead, *Cox* requires that "a certain amount of deference must be afforded DPS officers," unless their warnings are mere "vague assertions of risk." *Id*. And as already discussed in the opening brief, the assessments from DPS and law-enforcement experts in this case supporting withholding the requested information are no mere "vague assertions of risk." *See* TDCJ Br. 38-47.

*Cox* does not demand that a law-enforcement assessment of the probability of harm take on the form of a full-blown expert opinion, or qualify under Plaintiffs' expert's definition of a "threat assessment." *See* Plaintiffs' Br. 31-36 (arguing that an assessment of the probability of harm must take on a particular form, as outlined by Plaintiffs' expert Parker). True, *Cox* anticipates the physical-safety exception *could be* established through expert testimony. *Cox*, 343 S.W3d at 119. But it also envisions the exception could be established through other evidence. *Id*. Moreover, there is no indication in the *Cox* opinion or the *Cox* record on appeal that any expert testimony was presented at all until after the

11

case was remanded by the Supreme Court; DPS officials testified at the initial *Cox* trial, but not as expert witnesses.[2]

A law-enforcement assessment, especially from DPS, should be treated like an agency determination entitled to deference. *See* TDCJ Br. 26. *Cox* would not have spoken of "deference" to DPS if the Court really intended to set up a battle of experts. Choosing between competing expert testimony is the opposite of deference. Accordingly, there is no place in *Cox* for judges to act as security officers.

Putting these principles into practice and returning to the Obama example above, a law-enforcement assessment that disclosure of information about the President's schedule would present an unacceptably high "probability of harm" "must be afforded" deference. *Id.* If such an assessment were presented in response to a request for

---

[2] The relevant record for these purposes is the record that was before the Texas Supreme Court when it decided *Cox*, not the record from subsequent remanded proceedings in which DPS went beyond what is required (as it did in this case) by proffering expert opinions on the probability of harm and the threat to public safety from disclosure of requested information.

For much the same reason, Plaintiffs' reference to the post-remand *Cox* record does nothing to support its arguments in this case. *See* Plaintiffs' Br. 18 (invoking the *Cox* record from post-remand proceedings that supported withholding all requested information, not merely a portion of the requested information as is the case here), 39 (same).

12

disclosure, then disclosure would turn on evidence demonstrating the effect that any disclosure would have on the secrecy of the President's schedule. Plaintiffs surely would not argue that in such a scenario the law-enforcement assessment should be susceptible to a battle of the experts. The Court should correct the district court's acceptance of an unworkable legal standard under which such a battle will occur in every physical-safety-exception case.

### B. Plaintiffs' Invocation Of Past Attorney General Opinions Is Unavailing.

Although Plaintiffs do not make any meaningful argument based on past Attorney General Opinions, they nonetheless refer to several past informal letter rulings to support a contention that the underlying Attorney General opinion here "was a bit of an about-face." Plaintiffs' Br. 2. The Court need not be side-tracked by Plaintiffs' reference to these letter rulings; the letter rulings do not support Plaintiffs' arguments and, in any event, are not precedential. S*ee* Tex. Att'y Gen. ORD-673 (2001) (describing the difference between a nonprecedential informal letter ruling and a prior Attorney General determination).

Plaintiffs begin with informal letter ruling OR-17507 (2010), which did not involve the physical-safety exception. *See* Plaintiffs' Br. 3. *Cox*

first announced the exception over half a year after OR-17507 was issued. Letter ruling OR2010-17507 is not relevant here.

Next, Plaintiffs invoke informal letter ruling OR-10208 (2012), which was issued after *Cox* and involved a terse discussion of the "new standard." *Id.* Rejecting application of the physical-safety exception, the letter ruling noted that TDCJ sought the exception based solely on a *belief* that "harassment" of execution-drug suppliers "could escalate into violence." *Id.* Here, in contrast, TDCJ has fulfilled *Cox*'s requirements by securing a DPS assessment of the probability of harm, providing two expert opinions on the probability of harm, and connecting the disclosure of the requested information with the unacceptably high probability of harm identified by law-enforcement experts. Further, OR-10208 states that it "is limited to the particular information at issue in this request and limited to the facts presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information, or any other circumstances." *Id.* at 4. Texas Attorney General Opinion OR-10208 (2012) is therefore also of no assistance to Plaintiffs.

## C. Plaintiffs' Arguments Are Not Improved By Their Brief's Erroneous Characterization Of TDCJ's Motives.

Plaintiffs brief incorrectly accuses TDCJ of seeking to withhold the identity of the compounding pharmacy and pharmacist under the physical-safety exception because "suppliers will stop selling these drugs to TDCJ if their identities are known." Plaintiffs' Br. vi; *see also, e.g.*, *id.* at vii (ascribing to TDCJ a motivation to invoke the exception out of "general concerns that LID [execution-drug] suppliers might not continue to sell to TDCJ if they got bad publicity"); *id.* at 16 (implying that TDCJ invokes a substantial-threat-of-lost-business exception). These accusations are incorrect and, in any event, do not advance Plaintiffs' arguments.

TDCJ invoked the physical-safety exception out of concern for public safety.[3] It is not TDCJ's position that the physical-safety exception shields information from disclosure because disclosure might have an

---

[3] CR.552 ("The department seeks to withhold the identifying information of the pharmacy and pharmacist who provide the drugs used in executions and other information relating to the provision of said drugs because release of the information would jeopardize the safety of the persons associated with the pharmacy."); CR.558 (Affidavit of Brad Livingston noting, "TDCJ and selling pharmacies have long been concerned about the safety of the pharmacists providing the drugs used in executions, based on hate mail and threats to the pharmacists"); CR.639-40, 701-06 (testimony from Livingston regarding concern for public safety should the identity of the pharmacy be disclosed).

adverse effect on a company doing business with TDCJ, or because disclosure would make obtaining execution drugs more difficult for TDCJ.

Even if TDCJ were to seek protection of compounding-pharmacy information for economic reasons like those ascribed to TDCJ by Plaintiffs, there is a strong likelihood the information would in fact be withheld from disclosure. The Texas Supreme Court recently clarified in *Boeing* that even core-public information may be withheld from disclosure when it is information implicating the "privacy and property interests of a private party" (here, the pharmacy) and disclosure of the information "would give advantage to a competitor" of the private party. *Boeing*, 2015 WL 3854264, at *7 (internal quotation marks omitted). Thus, the Texas Supreme Court has already indicated that government agencies (or private parties) may shield information from disclosure under the PIA for economic or privacy reasons, and the showing required to do so is hardly onerous. *Cf.* Plaintiffs' Br. 16 (arguing, the "Supreme Court's formulation of the [physical-safety] standard is intentionally high because we are dealing with an exception to core public information."). Given that the physical-safety exception was introduced into the PIA's

scheme by the Texas Supreme Court, and given *Boeing* interpreted the PIA to shield third-party information from disclosure by showing merely that disclosure "would give advantage to a competitor," *Boeing*, 2015 WL 3854264, at \*7 (quotation marks omitted), \*9, Plaintiffs' (erroneous) assertions about TDCJ's supposed motivations for withholding the requested information are out of touch with current PIA jurisprudence and do not assist their arguments.

### D. Plaintiffs' Mistaken View Of The Physical-Safety Exception Infects Their Expert's Opinion.

The opinion of Plaintiffs' expert, Parker, should not have been considered at all, as discussed in TDCJ's opening brief. *See* TDCJ Br. 51-58. Moreover, Plaintiffs' erroneous view of *Cox* and its standard taint Parker's opinion and testimony because Parker's inquiry mirrors Plaintiffs' misunderstanding of *Cox*. Parker was concerned only with determining whether the evidence he reviewed demonstrated an actual threat to commit a violent act against an execution drug provider, and whether Cunningham and McCraw (TDCJ's experts) did all Parker felt necessary to make that same (inappropriate) determination. Parker did not, therefore, independently inquire into whether disclosing information

17

(and, in particular, information identifying the compounding pharmacy) presents an unacceptably high probability of harm. *See id*. 54-56.

The defense of Parker's opinion in Plaintiffs' brief only highlights Parker's inappropriate inquiry because it stresses that he was answering the wrong question. Thus, Plaintiffs' brief merely emphasizes:

- "the documents upon which TDCJ and DPS rely do not contain any discernible direct threats or any readily identifiable targeted threats against any pharmacies or individuals connected to them or to the TDCJ," Plaintiffs' Br. 9 (quotation marks omitted), 34;
- "the messages and reviews about the Woodlands Pharmacy" were not threats and only "amount to 'criticisms' of the pharmacy," *id* at 9;
- the exploding-head blog posting contained "no wording that could be loosely interpreted as threatening to the subject pharmacies or to anyone else, *id*. at 34 (quotation marks omitted), *see also id*. at 9;
- Plaintiffs' belief that expert testimony is needed to establish "what a '*threat assessment*' is in law enforcement parlance," *id*. at 31;
- "[a] 'threat assessment' is an investigation . . . to determine if a threat made to a person is a viable threat," *id*. at 32;
- "no true 'threat assessment' was ever performed by TDCJ"; *id*. at 10, 35;
- Parker's belief that a threat assessment for purpose of the physical-safety exception requires speaking to or confronting a person making an actual threat of violence; *id*.at 32;
- Parker's belief that it was "unlikely that [Humez] intended to commit any violence himself," *id*. at 25;
- Parker's belief that Humez "did not actually make any threats," *id*. at 10;

Parker's opinion and testimony not only should never have been considered, they also involved the wrong inquiry. *See* TDCJ Br. 51-56.

18

**II. PLAINTIFFS OFFER NO MEANINGFUL RESPONSE TO THE NEED FOR A REMAND IN THE EVENT THE COURT DETERMINES TDCJ IS NOT ENTITLED TO SUMMARY JUDGMENT.**

TDCJ's opening brief discussed TDCJ's alternative request for a remand even if the Court determines that TDCJ is not entitled to summary judgment. Plaintiffs' brief offers no meaningful response. Accordingly, because Plaintiffs, at most, could only raise a genuine issue of disputed fact regarding the applicability of the physical-safety exception, the portion of the district court's order granting Plaintiffs' summary-judgment motion should be reversed and the case remanded for trial, in the event the Court does not render judgment for TDCJ.

## PRAYER

The Court should reverse the district court and render judgment for TDCJ or, in the alternative, remand the case for trial on the merits.

Respectfully submitted.

Dated: September 14, 2015

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT KELLER
Solicitor General

/s/  Richard B. Farrer
RICHARD B. FARRER
Assistant Solicitor General
State Bar No. 24069702

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-2923
Fax: (512) 474-2697
richard.farrer@texasattorneygeneral.gov

COUNSEL FOR APPELLANT

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 14th day of September, 2015, a true and correct copy of the foregoing document was served via File & ServeXpress to all counsel of record.

Philip Durst
Manuel Quinto-Pozos
DEATS, DURST, OWEN & LEVY, P.L.L.C.
1204 San Antonio, Ste. 203
Austin, TX 78701
Telephone: (512) 4 7 4-6200
Facsimile: (512) 474-7896
pdurst@ddollaw.com
mqp@ddollaw.com

Maurie Amanda Levin
ATTORNEY AT LAW
211 South St., #346
Philadelphia, PA 19147
Telephone: (512) 294-1540
Facsimile: (215) 733-9225
maurielevin@gmail.com

/s/  Richard B. Farrer
Assistant Solicitor General

**CERTIFICATE OF COMPLIANCE**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 3,970 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/  Richard B. Farrer
Assistant Solicitor General
