ACCEPTED
15-24-00057-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/3/2025 12:00 AM
CHRISTOPHER A. PRINE
CLERK

**Wolfgang P. Hirczy de Mino, Ph.D.**

wphdmphd@gmail.com

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/3/2025 12:00:00 AM
CHRISTOPHER A. PRINE
Clerk

February 1, 2025

Case No.: Case No. 15-24-00057-CV, previously 11-23-00232-CV
Case Style: Tarleton State University v. Foundation for Individual Rights and Expression (FIRE)
Type of suit: Suit for mandamus against unit of government for release of records under the Texas Public Information Act (p/k/a Open Records Act)

## Suggestion of Lack of Standing Ab Initio by Amicus Curiae

Dear Clerk:

This is an appeal from a case in which an out-of-state organization (FIRE) brought a complaint under the Texas Public Information Act (PIA) about denial of access to records pertaining to a former faculty member at the defendant state university.

The PIA waives sovereign or governmental immunity only for mandamus relief against the resisting governmental unit, here Tarleton State University, along with claims for attorneys' fees for a prevailing plaintiff (which is the issue in FIRE's cross appeal).

In the underlying action for a statutory writ of mandamus against Tarleton State University, the dissatisfied requester sought documents pertaining to sexual harassment allegations made against a faculty member who is no longer with the university. In the appellate briefing, FIRE identifies the former faculty member by name while the University does not.

The PIA provides for the subject of public information requests to be given notice and an opportunity to assert objections to release. It doesn't appear that such opportunity for third-party input occurred in this case, and that there is a good reason for this: the existence of a settlement agreement that forecloses further litigation by the parties to the employment dispute ensuing from the

student complaints. I note that a person or entity whose interests may be affected by a PIA request is not only authorized to lodge objections with the OAG when a letter ruling is sought, but may also bring suit in his or her or its own name (or intervene in the requester's suit) to assert exceptions to release.[1]

### Does FIRE have constitutional standing to sue?

I respectfully submit that there are serious doubts that the out-of-state plaintiff for mandamus in the trial courts possesses injury-based standing under the now-prevailing requirements for constitutional standing as pronounced in recent Texas Supreme Court decisions involving abortion-related claims. *See, e.g., State v. Zurawski*, 690 S.W.3d 644 (Tex. 2024).

Further, according to recent pronouncement of the court of last resort on all matters of civil law and litigation in Texas courts, the intermediate courts of appeals must address doubts as to subject matter jurisdiction before entertaining the merits of the issues raised in the appeal. See, most notably, *Texas Right to Life v. Van Stean*, No. 23-0468, 2024 WL 4863170, -- S.W.3d -- (Tex. Nov. 22, 2024) (per curiam) (faulting the Third Court of Appeals for not addressing standing as to the redressability element and remanding to the intermediate court).

Here, the jurisdictional defect concerns the first element under the standing test rather than redressability: *Where is the plaintiff's particularized injury?*

To the extent the student journalists at Tarleton suffered an "informational injury" by being denied access to information they wanted and didn't receive, it's an injury to third parties that are not before the court. Ditto for any other journalists or media outfit that might have wanted to report on the purportedly juicy scandal at Tarleton, including the Chronicle of Higher Education. None of these media establishments is before this court and none is weighing in through an amicus brief either.

---

[1] *Boeing Co. v. Paxton*, 466 S.W.3d 831, 833, 839 (Tex. 2015) (recognizing that section 552.325 of the government code [public information act] provides a judicial remedy to third parties seeking to withhold requested information).

FIRE itself is an advocacy organization, rather than a media organization. It does not appear that FIRE can claim that it suffers or will suffer a revenue loss due to an inability to publish articles about a real or a trumped-up campus scandal.

Nor does it appear that FIRE can establish associational standing to vindicate an asserted or implied interest of student journalists devoted to scandal mongering. Such lack of standing to sue on behalf of others would defeat justiciability independent of the primary justiciability issue: whether student journalists or any other members of the press/media can validly claim an informational injury occasioned by the University's refusal to release certain records that implicate the involved individuals' privacy rights and reputational interests. The students' interest are already protected by FERPA, but nobody speaks up for the interests of faculty being falsely accused or being accused for cause but not being given a chance to defend themselves or tell their side of the story (assuming there is one).

### Where is the news value?

Additionally, it would appear that the alleged harassment allegations, sex-related or otherwise, no longer have any news value in any event because they were made prior to 2018, which makes them dated by more than six years.

In that connection, I would point out that the residual statute of limitations in Texas is four years, and that it is two years for personal injury suits, two years for tortious interference, and only one year for defamation. So, any legal claims relating to the alleged scandal – "*his scandal*" according to the terminology of choice in the briefing -- have been time-barred for years.

More importantly, however, it would appear that a settlement agreement made for valid consideration (contract buyout by the University in exchange for release of claims by the accused faculty member) precludes any further claims from being made by either party in the employment dispute. I will get to that below.

### Are there other legitimate reasons for release?

That said, scandal mongering is not the only possible interest affected by release or nonrelease of information involving Title IX and Title VII matters. There might also be a serious academic or legal research interest that is

completely disconnected from any economic incentive journalists and media organizations might have to satisfy popular demand for salacious, titillating, and scandalous stories.

Fellow academics at Tarleton, for example, might have an interest in knowing how the University addresses allegations of sexual harassment, which are potentially career-ending, and whether the handling thereof was fair and constitutionally adequate to a colleague subjected to them.

Based on the scant information revealed in the briefing, however, the public cannot even tell whether the supposed harassment ascribed to the faculty member in question was by word or by deed. That would appear to be a serious problem for the Court hearing this matter, and making precedent at the conclusion of the process. In effect, it appears that the Court is being asked to rule in the absence of evidence, and render precedent on vague representations as the nature of the facts underlying the student complaints.

### Flying blind

According to one of the briefs, the faculty member was accused of "serious impropriety." What does that mean in concrete terms? Trial court judges are routinely accused of "abuse" and "improper" conduct. It's part of the appellate routine. You have to assign error. Error has to be "attacked" or else it's waived. And any alleged error was of course committed by the judge below.

No better for charges of harassment. Much speech and even conduct can willy-nilly be labeled harassment these dates. And not infrequently all it takes to make it sexual is heterosexuality: a woman accusing a man. Much of the media no longer even distinguishes between allegations merely made and allegations actually proven.  And a mere allegation, regardless of the truth, causes much reputational damages. Especially when widely propagated by the media or other online outlets for clickbait material.

Without even having seen the clerk's record (which is not posted publicly), it appears to me that this Court is being asked to make case law in the abstract likely not knowing anything about the underlying facts. And likewise for the judge below unless the documents in question were produced for in camera inspection. At best, both courts must rely on unreliable student

press reporting of allegations, which is to say hearsay whose truthfulness was likely never tested.

## The PIA is a citizen suit & private enforcement statute

Like the Texas Heartbeat Act (aka Senate Bill 8), the Texas Public Information Act authorizes anyone to sue regardless of whether they can legitimately claim an injury. At best, they can claim that the denial of information itself constitutes the injury. But that Fifth Circuit has already ruled that such purported injury is not concrete enough; at least not for Article III purposes in federal court. And the Texas Supreme Court, for better or worse, is following federal article III jurisprudence even though Texas state courts are not article III courts, but courts of general jurisdiction.

## Is the desire to make case law sufficient?

FIRE might argue that it is an advocacy organization and that it has an interest in making case law in line with its value and mission. Perhaps that suffices, perhaps it does not. But FIRE is the appellee here and there was no assurance that Tarleton would appeal, which is a *sine-qua-non* for an appellate decision on the substance of the PIA issue. Jurisdiction must exist at the inception of the suit in the trial court. It cannot be extemporized on appeal.

Be that as it may, any member of the public can make a public information request to a state entity, and I did the same as a natural-person member of the public.

As a result, I have learned that Tarleton State University and the maligned faculty member signed a separation agreement on September 25, 2018, that provides for payment of $61,352.00 to the departing faculty member.

> 4.      The University has determined that it is in its best interest to pay, and has agreed to pay Landis $61,352.15 ($51,665.00 which represents 8 months gross salary and $9,617.15 which represents summer school pay) less applicable payroll taxes, in two lump sum payments equal to one-half of the just stated amount in consideration for his resignation effective September 30, 2018 and his additional covenants set forth in this Agreement. The first payment shall be paid within thirty (30) business days of the execution of this Agreement, and the second payment shall be paid January 15, 2019. No withholding for TRS shall be made on the lump-sum payments.

This agreement also includes a non-disparagement clause at numbered paragraph 7.

It would thus appear that the University is bound by the settlement agreement, and that this would provide legal grounds independent of the FERPA strictures to deny access to the records that FIRE brought suit to obtain through a statutory writ of mandamus. The argument would presumably be that the contractual obligation assumed by Tarleton in exchange for not being sued by the faculty member that accepted the settlement constitutes "other law" that precludes release of what are presumably disparaging and possibly defamatory statements contained in the student complaints and the University's handling of the employment dispute entailed by the student complaint or complaints.

### Fresh PIA Request by Amicus in January 2025

Having learned about the pendency of this case while satisfying my curiosity of what was going on in the newly established 15th Court of Appeals, I requested the same records sought by FIRE from Tarleton State University, albeit not necessarily for the same reasons, and was denied documents about the sexual harassment complaint(s) too.

I therefore have no basis to judge whether the faculty member in question deserves being maligned or not. Nor can I therefore make an intelligent decision whether to support him, which is to say nondisclosure of the documents pertaining to the student complaints and his employment dispute with Tarleton. I have looked at student comments online and they are mostly laudatory. That, of course, says nothing about the legitimacy or otherwise of a singular complaint that resulted in a disciplinary or similar type of action against the faculty member.

If this Court affirms the trial court's judgment in favor of compelled release, I stand to benefit from this resolution because I will then be entitled to get my hands (or rather eyes) on those records likewise.

If, on the other hand, the Court determines that FIRE does not possess standing to sue under the Texas Public Information Act, - either because FIRE is not a natural person or Texas citizen or because FIRE cannot meet the requirement to show a sufficient interest or injury, or any connection to the

underlying facts and associated legal/employment dispute,[2] the question then becomes whether someone else, someone in Texas, can meet those requirements. That is an important question for the court resolve when asked to establish precedent that will apply not only to similar public records requests in future, but suits to enforce the PIA.

At the minimum, the faculty at Tarleton State University would appear to have a stake in the matter of their own job security, not just in relation to possible misconduct or "improper behavior" and the University's actions in such matters, but false allegations of misconduct.

### Critical Jurisprudential issue: Who has standing to sue under PIA?

The threshold question in this appeal is this: Who can meet the standing requirements now that the Texas Supreme Court has put in place "constitutional standing" requirements (in addition to statutory authorization of a cause of action) consonant with article III standing in federal court. That is an important jurisprudential issue implicated by this case which, according to the High Court, must be addressed as soon as the court becomes aware of it. It is not even necessary for a party to raise it. Or an amicus, for that matter.

This specialized intermediate court should take it up now to avoid a round-trip to the Texas Supreme Court as happened in the TCPA appeal from the Texas Heartbeat MDL.[3] Moreover, future PIA enforcement cases will make it to this court in due courts because a governmental entity is always a party, so the issue of standing and justiciability will not go away even it this Court takes a pass in this case.

---

[2] See Justice Young's observations regarding the lack of connection of an out-of-state submitter of an attorney disciplinary complaint against a top aide of Attorney General Kenneth Paxton. *Webster v. Commission for Lawyer Discipline* No. 23-0694 (Tex. Dec. 31, 2024)("Among the grievances was Brynne VanHettinga's. VanHettinga does not reside in Texas, is an inactive member of the State Bar of Texas, and has no connection to the underlying litigation. Nevertheless, she faulted the first assistant for making "specious legal arguments and unsupported factual assertions" in the initial pleadings.").

[3] *Texas Right to Life v. Van Stean*, No. 23-0468, 2024 WL 4863170 (Tex. Nov. 22, 2024) (per curiam).

## CONCLUSION AND PRAYER

The issues raised by the party briefs in this case seem deceptively simple and that's presumably the reason the Court has already denied oral argument.

However, in light of recent Texas Supreme Court decisions, there is a serious question whether Plaintiff FIRE, the thwarted requester under PIA in this case, has standing to sue given its apparent lack of actual or impending injury and lack of a connection to the underlying events that gave rise to the making of the records that are being withheld by the defendant university.

This Court should promptly address the question of justiciability since it goes to whether the trial court had any power to do anything but dismiss at the inception of the litigation.

In the alternative, the Court should consider whether the Supreme Court's intervening decision in *Univ. of Texas v. GateHouse*, No. 23-0023 (Tex. Dec. 31, 2024) has an impact on this case by retroactively justifying a discretionary withholding of the records sought by FIRE. After all, all the disputed records are derivative of complaints made by students whose records are covered by FERPA: Except perhaps for final results information of implicated students who committed code of conduct violations of their own and where perhaps expelled for lying or cheating or for attempted extortion to obtain a better grade than deserved rather than money.

Respectfully submitted,

/s/ *Wolfgang P. Hirczy de Miño*

Wolfgang P. Hirczy de Mino, PhD[4]

Email: wphdmphd@gmail.com

Social Scientist, not Attorney at Law

Amicus Curiae in Support of Neither Party

---

[4] Hirczy de Mino Google Scholar Author profile at
https://scholar.google.com/citations?user=k1KFwaYAAAAJ&hl=en

**Texas Right to Life and John Seago, Petitioners,**
**v.**
**Allison Van Stean; Planned Parenthood of Greater Texas Surgical Health; Planned Parenthood South Texas Surgical Center; Planned Parenthood Center for Choice; Bhavik Kumar, M.D.; North Texas Equal Access Fund; Lilith Fund for Reproductive Equity, Inc.; The Afiya Center; Fund Texas Choice; West Fund; Frontera Fund; Clinic Access Support Network; The Bridge Collective; Monica Faulkner; Michelle Tuegel; Ghazaleh Moayedi, D.O.; and Jane Doe, Respondents.**

No. 23-0468.

**Supreme Court of Texas.**

Opinion delivered: November 22, 2024.

On Petition for Review from the Court of Appeals for the Third District of Texas.

PER CURIAM.

Although the underlying litigation involves the hotly disputed issue of abortion, the trial court correctly observed that, at least at this stage, the "case is not about abortion; it is about civil procedure." More specifically, it is about subject-matter jurisdiction, which is always an antecedent requirement before a court may address the merits. In this case, Texas Right to Life challenged the plaintiffs' standing—and thus the trial court's subject-matter jurisdiction—in both a plea to the jurisdiction and a motion to dismiss under the Texas Citizens Participation Act. An order resolving a TCPA motion constitutes a ruling on the merits. Any jurisdictional objections must therefore be addressed first, regardless of the form or label of the pleading in which such objections were raised, or whether they were raised by a party or by the court itself, or even whether they were raised before the trial court at all rather than for the first time on appeal. For that reason, it does not matter that the denial of the plea to the jurisdiction was not itself appealable. What matters is that the court of appeals could reach the merits of the TCPA motion only if the trial court had subject-matter jurisdiction over the case in the first place. Because the court of appeals failed to address standing, we grant the petition for review, reverse the court of appeals' judgment, and remand to that court for further proceedings.

# I

In 2021, the Legislature enacted Senate Bill 8, also known as the Texas Heartbeat Act (the "Act"). The Act provides that "a physician may not knowingly perform or induce an abortion on a pregnant woman if the physician detected a fetal heartbeat for the unborn child . . . or failed to perform a test to detect a fetal heartbeat." TEX. HEALTH & SAFETY CODE § 171.204(a). No one may aid or abet such an abortion, either. *See id.* § 171.208(a)(2). Unlike many laws, the Act may be enforced only through private civil actions, not through actions by government officials. *Id.* §§ 171.207(a), .208(a). A successful plaintiff can receive injunctive relief, statutory damages, costs, and attorney's fees. *Id.* § 171.208(b).

Allison Van Stean and the other plaintiffs in this case allege that defendants Texas Right to Life and John Seago (collectively, TRTL) have organized efforts to sue those who may be, or may be perceived to be, violating the Act. The plaintiffs filed more than a dozen separate suits challenging the Act's constitutionality and sought injunctions preventing TRTL from seeking to enforce the law against them. On TRTL's motion, the cases were transferred to a multidistrict litigation court, which we call "the trial court." *See* TEX. R. JUD. ADMIN. 13.3, 13.5.

TRTL filed a plea to the jurisdiction and a motion to dismiss under the TCPA. Both motions challenged the plaintiffs' standing to bring their claims. The trial court denied both motions, thus asserting subject-matter jurisdiction over the case and holding that it should proceed. The TCPA authorizes an interlocutory appeal to review the denial of a motion to dismiss, and TRTL appealed. While the appeal was pending, the U.S. Supreme Court decided *Dobbs v. Jackson Women's Health Organization,* 597 U.S. 215 (2022), in which it overruled *Roe v. Wade,* 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833 (1992).

Despite TRTL's contention both at the trial court and on appeal that the plaintiffs lacked standing, the court of appeals did not address that question. The court instead affirmed the trial court's order on the ground that the TCPA does not apply to the plaintiffs' claims. ___ S.W.3d ___, 2023 WL 3687408, at *7 (Tex. App.-Austin May 26, 2023). TRTL petitioned for review.

## II

The court of appeals erred by failing to address standing.

## A

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553-54 (Tex. 2000). "The standing requirement derives from the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract, and from the [Constitution's] open courts provision, which provides court access only to a `person for an injury done him.'" *Meyers v. JDC/Firethorne, Ltd.,* 548 S.W.3d 477, 484 (Tex. 2018) (quoting TEX. CONST. art. I, § 13). Because standing is a jurisdictional requirement, the lack of standing may be raised by the court or parties at any time. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445-46 (Tex. 1993). Indeed, it would "violate constitutional principles" for "appellate courts to address the merits of cases without regard to whether the courts have jurisdiction." *Rusk State Hosp. v. Black,* 392 S.W.3d 88, 95 (Tex. 2012). That is why "[t]he fundamental rule is that the court may not reach the merits if it finds a single valid basis to defeat jurisdiction." *Rattray v. City of Brownsville,* 662 S.W.3d 860, 868 (Tex. 2023). "As a corollary, the court may not move to the merits if even one jurisdictional argument remains unresolved." *Id.* at 869.

Addressing the merits of the TCPA motion to dismiss without addressing subject-matter jurisdiction violated these principles. Resolving a dispute before resolving a jurisdictional challenge risks the rendition of an unconstitutional advisory opinion. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 444. Going beyond the judicial role, in turn, implicates the independence of the judiciary, which depends on its resolving only genuine disputes that are properly justiciable. Any erosion of that principle makes it easier to prematurely drag the judiciary into highly contentious and politicized debates that, unless and until they ripen into concrete disputes fit for judicial resolution, remain only within the domain of the other branches of government. The underlying subject matter of this case illustrates the point. But the requirement that courts must have subject-matter jurisdiction before proceeding to the merits applies in every case, ranging from the most banal to the most controversial.

The court of appeals was on notice that the plaintiffs' standing was in question, and it should have assured itself of subject-matter jurisdiction before proceeding. Three circumstances particular to this case may have led that court to think that the well-established rule of addressing jurisdiction before the merits did not apply here, but none absolved the court of its responsibility to decide whether the plaintiffs had standing to sue before addressing the substantive merits question of whether their lawsuit was one that implicates the TCPA.

First, the court of appeals may have believed that it was following its own precedent. In *de la Torre v. de la Torre,* the Third Court of Appeals treated "standing" as a "fundamental component of a prima facie case" under the TCPA. 613 S.W.3d 307, 312 (Tex. App.-Austin 2020, no pet.). Whether the plaintiff has made out a prima facie case is an inquiry that is subsequent to whether the TCPA applies at all. *See McLane Champions, LLC v. Hous. Baseball Partners LLC,* 671 S.W.3d 907, 914 (Tex. 2023) (describing the "multi-step analysis" of TCPA motions to dismiss). The court in *de la Torre* therefore analyzed "standing" *after* determining that the TCPA applied to the plaintiff's claims. 613 S.W.3d at 312.

That court's use of the term "standing," however, did not refer to standing in the constitutional sense. While *de la Torre* was pending, we decided *Pike v. Texas EMC Management, LLC,* in which we clarified the distinction between "standing in the true constitutional sense of that term" and "statutory or prudential considerations that `do[] not implicate subject-matter jurisdiction' but determine whether a plaintiff `falls within the class of [persons] . . . authorized to sue' or otherwise has `a valid . . . cause of action.'" 610 S.W.3d 763, 773-74 (Tex. 2020) (alterations in original) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 128 & n.4 (2014)). We have likewise acknowledged that "[s]ome of our older opinions use standing as a short-hand reference for a plaintiff's ability to fulfill some statutory prerequisite to bringing suit or recovering on a claim." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.,* 659 S.W.3d 424, 439 (Tex. 2023). "The phrasing is regrettable," however, because it "has tangled the line demarcating issues that truly implicate a trial court's subject-matter jurisdiction from those pertaining to the merits." *Id.* at 439-40. The distinction is critical because standing, as that term is properly used, implicates subject-matter jurisdiction, while other issues sometimes referred to as standing, including whether a cause of action exists or whether a given plaintiff has the right to bring such a cause of action, pertain to the merits and generate judgments on the merits. "The integrity of that line is fundamental to the working of the civil justice system because a court without subject-matter jurisdiction cannot decide the case at all." *Id.* at 440.

In *de la Torre,* the court of appeals concluded that the TCPA respondent could not bring an action under Section 261.107 of the Family Code because that provision does not create a private right of action. 613 S.W.3d at 312-13. Assuming the accuracy of that holding—a question on which we offer no view—it would not indicate that the party lacked constitutional standing. Whether the party had a cause of action under the statute was instead a merits question. *See Molina Healthcare,* 659 S.W.3d at 440. Thus, it was *because* the court of appeals in *de la Torre* used "standing" in its merits sense that it could properly analyze the cause-of-action issue when determining whether the TCPA non-movant had established clear and specific evidence of the elements of his claim.

But here, TRTL has challenged the plaintiffs' "standing in the true constitutional sense of that term." *Pike,* 610 S.W.3d at 773. TRTL specifically invokes the traditional elements of standing and argues that the plaintiffs have not shown that their injuries are traceable to TRTL or likely to be redressed by their requested relief. The decision in *de la Torre* is thus inapposite.

Second, and perhaps also influenced by *de la Torre,* TRTL urged the court of appeals to analyze standing through the lens of the TCPA. TRTL presented standing as an element of the plaintiffs' claims and argued that they needed to produce "`clear and specific evidence' of standing" to survive the TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). If that framing had

been correct, then the court of appeals' order of operations would have made sense. Because the court held that the TCPA did not apply to the plaintiffs' claims, 2023 WL 3687408, at *4-7, it felt no need to move to the next step in the TCPA analysis and consider whether the plaintiffs established each element of their claims by clear and specific evidence.

TRTL's framing puts the cart before the horse. It delays a consideration of standing until the second step of a TCPA analysis and would then subject the standing analysis to the stringent requirements applicable to the elements of a cause of action. To even reach that step, however, a court must already have decided that the TCPA movant met its burden to show that "the TCPA applies to the legal action against it," _McLane Champions,_ 671 S.W.3d at 914—a merits determination.

Perhaps the term "merits," like "jurisdiction," "is a word of many, too many, meanings." _In re United Servs. Auto. Ass'n,_ 307 S.W.3d 299, 305 (Tex. 2010) (quoting _Steel Co. v. Citizens for a Better Env't,_ 523 U.S. 83, 90 (1998)). For example, we have referred to the "merits" of a plea to the jurisdiction. _Tex. Dep't of Parks & Wildlife v. Miranda,_ 133 S.W.3d 217, 224 (Tex. 2004). We meant, of course, whether the law required the court to grant rather than deny the plea. Other "merits" questions are likewise distinct from the ultimate merits question of whether the plaintiff's claims justify rendition of judgment for the plaintiff. Whether to certify a class action involves merits questions concerning the applicability of Texas Rule of Civil Procedure 42, not whether the claims are well-founded; whether the statute of limitations applies is a merits question, even though the reason to invoke limitations is to avoid consideration of the merits of the plaintiff's claim. The applicability of the TCPA is a "merits" determination in the same way. Deciding any such issue would be an impermissible advisory opinion in the absence of subject-matter jurisdiction.

By contrast, "[c]ourts always have jurisdiction to determine their own jurisdiction," _Hous. Mun. Emps. Pension Sys. v. Ferrell,_ 248 S.W.3d 151, 158 (Tex. 2007), so it is never advisory for a court to resolve an issue that disposes of a jurisdictional objection. Any issue _not_ necessary to a jurisdictional determination, therefore, goes only to the merits. A court may reach such a merits issue only after assuring itself of its subject-matter jurisdiction.

This Court's cases have already recognized the TCPA's applicability to a non-movant's claims as a merits question. For that reason, as we recently explained, the TCPA does not authorize inverting the normal requirements of establishing jurisdiction first: "Because standing is a threshold jurisdictional issue that is essential to a court's power to decide a case, we address that issue _before turning to the substance of the TCPA motion._" _McLane Champions,_ 671 S.W.3d at 912 (emphasis added) (quotation marks omitted). The court of appeals should have done the same here, no matter how the parties framed the issue. And because standing is a constitutional requirement independent of any particular cause of action or procedural vehicle, the court should have analyzed standing in the ordinary way, without putting a thumb on the scales.

Third, the court of appeals may have failed to address standing because TRTL could not appeal the trial court's denial of its plea to the jurisdiction. The court of appeals stated that "this interlocutory appeal concerns only the [trial] court's ruling on the TCPA motion to dismiss." 2023 WL 3687408, at *3. And it cited Section 51.014 of the Civil Practice and Remedies Code, which allows an interlocutory appeal from the denial of a TCPA motion to dismiss but not from the denial of a plea to the jurisdiction filed by a non-governmental party. _See_ TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12). We have explained, however, that because standing is a prerequisite to subject-matter jurisdiction, the absence of standing "may be raised by a plea to the jurisdiction, _as well as by other procedural vehicles._" _Blue,_ 34 S.W.3d at 554 (emphasis added) (footnote omitted). "If an appeal on the merits is properly pending before an appellate court . . ., that court needs no separate procedural vehicle (like an appealable denial of a plea to the jurisdiction) before it can and must first discharge its duty to ensure its own jurisdiction." _Dickson v. Am. Gen. Life Ins. Co.,_ 698 S.W.3d 234,

235 (Tex. 2024) (Young, J., concurring in denial of petition for review). What matters is not the title of a pleading but rather its jurisdictional nature. *See, e.g., Oscar Renda Contracting, Inc. v. Bruce,* 689 S.W.3d 305, 311 (Tex. 2024) (noting that "our Court has consistently held that we examine the substance of a motion or pleading rather than requiring the formality of a title"); *Thomas v. Long,* 207 S.W.3d 334, 339 (Tex. 2006) (treating a summary-judgment motion as a plea to the jurisdiction for purposes of appellate jurisdiction).

TRTL quickly and properly raised its jurisdictional objections in the trial court, but it would not make a difference if doubts about standing—or anything else with jurisdictional significance—had not been raised until after the interlocutory appeal was perfected. True, it is more than preferable that any jurisdictional issue first be presented to the trial court, and as soon as possible. Counsel's duty to the court includes "rais[ing] alleged defects in subject-matter jurisdiction when they first become apparent, not merely when doing so becomes strategically expedient." *I.L. v. Alabama,* 739 F.3d 1273, 1284 n.6 (11th Cir. 2014); *see also, e.g., Richardson v. Koch Law Firm, P.C.,* 768 F.3d 732, 734 (7th Cir. 2014) (noting that counsel "had an ethical duty to alert the court" to a development that "affects subject-matter jurisdiction"). But "[s]ubject-matter jurisdiction cannot be waived, and can be raised at any time." *Alfonso v. Skadden,* 251 S.W.3d 52, 55 (Tex. 2008).

It follows that jurisdiction must be addressed in a properly filed interlocutory appeal, regardless of the order appealed. *See Rusk State Hosp.,* 392 S.W.3d at 95. Thus, the fact that TRTL could formally appeal only the order denying its TCPA motion was no bar to the court of appeals' determining whether the plaintiffs had standing. To the contrary, because standing was cast in doubt, the court could render no decision on the merits of the interlocutory appeal until it confirmed the plaintiffs' standing.

# B

As this Court's cases have already made clear, a pending TCPA motion does not create jurisdiction when there is no jurisdiction to entertain the underlying case. We made this point in *McLane Champions,* 671 S.W.3d at 913 (first determining standing and then "turn[ing] to the applicability of the TCPA"), but it was even more clearly the holding in *Diocese of Lubbock v. Guerrero,* 624 S.W.3d 563 (Tex. 2021).

There, a Catholic deacon sued the Diocese after it included his name "on a list of clergy credibly accused of sexual abuse." *Id.* at 564. The Diocese filed a plea to the jurisdiction arguing that the ecclesiastical-abstention doctrine barred the deacon's claims and also filed a TCPA motion to dismiss. *Id.* After the trial court denied both, "[t]he Diocese appealed the order denying the motion to dismiss and sought mandamus relief from the order denying its jurisdictional plea." *Id.* In an original proceeding, we held that the ecclesiastical-abstention doctrine applied, conditionally granted the Diocese's petition for writ of mandamus, vacated the trial court's order denying the plea, and directed the trial court to dismiss the case for want of jurisdiction. *In re Diocese of Lubbock,* 624 S.W.3d 506, 519 (Tex. 2021). In the companion appeal, we explained that, "[i]nasmuch as the trial court lacks jurisdiction to proceed in the underlying litigation, the collateral matters under the TCPA asserted in this interlocutory appeal are moot." *Guerrero,* 624 S.W.3d at 564. We reiterated that "[i]f the trial court lacks subject matter jurisdiction, the appellate court can make no order other than reversing the judgment of the court below and dismissing the cause." *Id.* (quoting *City of Garland v. Louton,* 691 S.W.2d 603, 605 (Tex. 1985)). Accordingly, we vacated the trial court's order denying the TCPA motion and dismissed the case. *Id.*

To be sure, we have held that a claim for TCPA fees and sanctions can "breathe[] life" into an otherwise-moot appeal. *State ex rel. Best v. Harper,* 562 S.W.3d 1, 8 (Tex. 2018). That happens,

however, only "if the party prevailed *before* the substantive claim became moot." *Id.* at 7 (emphasis added). In *Harper,* the movant prevailed, and *then* the claim became moot, so this Court proceeded to consider the TCPA's applicability. *Id.* at 8.

Here, by contrast, TRTL never prevailed on its motion, either in the trial court or the court of appeals. More importantly, if TRTL is correct that the plaintiffs *never* had standing, then TRTL never *could* have prevailed on its TCPA motion—at no time did any court have subject-matter jurisdiction to reach any merits question or to declare TRTL a prevailing party as to such a question. *Cf. id.* at 7-8 (noting that "if the party did not prevail before the substantive claim became moot, the party's claim for attorney's fees is also moot because the party can never prevail and thus can never be entitled to attorney's fees").

Central to this principle is the important distinction between standing and mootness. A case in which no plaintiff ever had standing is a case in which a court *never* had subject-matter jurisdiction, so dismissal was always the only permissible outcome. By contrast, a case that becomes moot is one in which the trial court *did* have subject-matter jurisdiction at the outset, which means that the court could properly entertain a TCPA motion and address other merits issues. For that reason, the subsequent mootness of the underlying claim would not destroy entitlement to rights that had properly attached under the TCPA at a point in which the trial court had jurisdiction to reach merits issues.

We are mindful that, at first glance, this rule may sometimes appear unfair to the TCPA movant. After all, a prevailing movant is entitled to costs and attorney's fees and may receive sanctions "sufficient to deter the party who brought the legal action from bringing similar actions" in the future. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(2). Some of the most egregious lawsuits aimed at chilling speech and participation in government may be brought by those without standing to bring them. Denying fees and sanctions under the TCPA in this circumstance may seem strange.

Several circumstances, however, mitigate this concern without requiring a court that lacks subject-matter jurisdiction to opine on merits issues. For one thing, immediate dismissal for lack of jurisdiction does advance one key TCPA goal—"to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." *ExxonMobil Pipeline Co. v. Coleman,* 512 S.W.3d 895, 898 (Tex. 2017). In addition, if a plaintiff who lacks standing brings a truly frivolous or vexatious suit, the court is empowered to impose sanctions wholly apart from the TCPA. *See* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE § 11.054 (permitting a court to find a plaintiff to be a vexatious litigant). These and other tools allow courts to respond to abuses of the judicial process but do not depend on the result of the merits questions underlying a plaintiff's suit or a defendant's TCPA motion.

Thus, the court of appeals should apply *Guerrero* on remand. If the plaintiffs lack standing, the court should not address the TCPA motion at all. Instead, it should vacate the trial court's orders and dismiss the case without any remand to the trial court. If the court concludes that the case is justiciable—because the plaintiffs had standing and because there is no other jurisdictional defect—it should do what it prematurely did last time: address the merits of the motion to dismiss, beginning with the applicability of the TCPA to the plaintiffs' claims. *See McLane Champions,* 671 S.W.3d at 913.

# III



Accordingly, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment, and remand the case to the court of appeals for further proceedings. *See* TEX. R. APP. P. 59.1.

## TRAP 11 CERTIFICATION

Pursuant to rule 11 of the Texas Rules of Appellate Procedure I hereby certify that I have not received monetary compensation for the preparation of this amicus curiae submission and that that I am serving the attorneys of all parties of record simultaneously through the Texas efiling system.

/s/ *Wolfgang P. Hirczy de Miño*

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96875612
Filing Code Description: Letter
Filing Description: Amicus Letter Brief
Status as of 2/3/2025 7:07 AM CST

Associated Case Party: TARLETON STATE UNIVERSITY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alyssa Bixby-Lawson | | Alyssa.Bixby-Lason@oag.texas.gov | 2/1/2025 2:40:33 PM | SENT |

Associated Case Party: FIRE

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Gabriel Walters | | gabe.walters@thefire.org | 2/1/2025 2:40:33 PM | SENT |

Associated Case Party: WolfgangP.Hirczy de Mino

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Wolfgang PHirczy de Mino | | wphdmphd@gmail.com | 2/1/2025 2:40:33 PM | SENT |